**RIDGEWELL'S, INC.**

v.

**The UNITED STATES.**

**No. 149–80T.**

United States Court of Claims.

July 29, 1981.

Robert D. Grossman, Jr., Washington, D. C., atty. of record, for plaintiff; Grossman & Flask, P. C., Washington, D. C., of counsel.

Marc Levey, Washington, D. C., with whom was Acting Asst. Atty. Gen., John F. Murray, Washington, D. C., for defendant; Theodore D. Peyser, Jr., and Robert S. Watkins, Washington, D. C., of counsel.

Before COWEN, Senior Judge, and DAVIS and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge, delivered the opinion of the court:

This tax refund case comes before the court on plaintiff's motion for summary judgment and defendant's opposition thereto. The dispute centers around whether certain individuals are employees of plaintiff with the consequence that plaintiff would have to withhold and pay the taxes imposed by the FICA,[1] FUTA,[2] and income tax withholding[3] provisions ("employment taxes") with respect to amounts paid to those individuals. Plaintiff seeks relief on two independently sufficient grounds: (1) the individuals are not plaintiff's employees and (2) whether or not they are plaintiff's employees, plaintiff is relieved of any liability for the taxes because of the relief provisions of the Revenue Act of 1978, Pub.L.No. 95–600, § 530, 92 Stat. 2885. The instant motion is based solely on the second theory. We hold for plaintiff.

Plaintiff, Ridgewell's, Inc., was incorporated as a District of Columbia corporation on December 17, 1970, with its principal offices in Bethesda, Maryland. It is the continuation of a catering business begun in 1928 by Clarence Ellis, trading as Ridgewell's. (For convenience, we refer to both Ridgewell's and Ridgewell's, Inc., as "plaintiff.") In connection with its catering service, plaintiff will often supply a customer with waiters, waitresses, bartenders, and barmaids (hereinafter "waiters"). Plaintiff contends that it engages the waiters as independent contractors and not as employees.

Over the course of the years, plaintiff's business relationship with the waiters has not materially changed. That relationship is as follows: once plaintiff's food is delivered to a customer, the customer is free to serve it as he chooses. Some customers request plaintiff to supply waiters to help serve the food. Plaintiff then contacts people it knows are interested in working as part-time waiters. Thus, plaintiff only contacts these people on an as-needed basis.

The waiters only work such jobs as they wish. Plaintiff is under no obligation to find work for any of them, and they are not obligated to work at any of the affairs plaintiff caters. Waiters occasionally obtain substitutes for themselves for particu-

---

1. The FICA, or Federal Insurance Contributions Act, provisions appear at I.R.C. §§ 3101–3126.

2. The FUTA, or Federal Unemployment Tax Act, provisions appear at I.R.C. §§ 3301–3311.

3. The income tax withholding provisions appear at I.R.C. §§ 3401–3404.

lar jobs without first obtaining permission from plaintiff. The waiters supply their own utensils and serving equipment. They wear, clean, and maintain their own uniforms, which do not bear the insignia or name of any caterer. Often they will work for more than one caterer in a single day. The waiters supply their own transportation to and from each affair. They are engaged on a job-by-job basis and receive a set sum in return for their services either from plaintiff or directly from the customer. Plaintiff treats them as independent contractors for non-tax as well as tax purposes. They do not participate in any of plaintiff's group insurance, profit sharing, or fringe benefit programs. Plaintiff's insurance company does not consider them to be plaintiff's employees.

Plaintiff did not withhold or pay employment taxes with regard to the waiters from the commencement of its business in 1928 through the second calendar quarter of 1974. In 1951 and again in 1958, plaintiff received private letter rulings from the IRS concluding that these waiters were not employees for federal employment tax purposes. On February 18 and August 6, 1971, IRS inquired as to why a certain waitress was not included on plaintiff's payroll returns. Plaintiff responded that she was an independent contractor and included copies of the 1951 and 1958 rulings. IRS took no action on the matter.

Finally, the issue was raised in the course of an audit of plaintiff's federal income tax returns for tax years ending September 30, 1972, and September 30, 1973. The examining Revenue agent, David Oravecz, inquired why employment taxes were not withheld for the waiters and was shown the 1951 and 1958 rulings. Nevertheless, he directed plaintiff to withhold and pay employment taxes for the waiters, and plaintiff commenced to do so beginning with the third calendar quarter of 1974. Plaintiff stopped doing so on or about December 31, 1978.

Meanwhile, the IRS District Director in Baltimore, Maryland, requested technical advice on the issue. On or about July 17, 1975, the National Office of the IRS issued a technical advice memorandum to the District Director to the effect that the waiters were employees for employment tax purposes. However, IRS concluded that plaintiff's liability for the taxes should only run from the date it received a copy of the memorandum because of the earlier letter rulings to the contrary. Plaintiff received a copy of the memorandum sometime in the third quarter of 1975.

Plaintiff filed a claim for refund of the employment taxes on or about September 15, 1978. It sought a refund for the period July 1, 1974, through June 30, 1978. Six months elapsed without a formal disallowance of plaintiff's claim and so it brought suit here. Plaintiff does not now claim a refund for any taxes paid during 1974, conceding that it failed to file a timely refund claim as to such periods, and it is therefore barred by the statute of limitations. Since the filing of the petition, IRS has refunded plaintiff's FICA taxes for the first two quarters of 1975, apparently on the ground that the technical advice memorandum was to be effected prospectively and plaintiff received it after the first two quarters of 1975. The parties seem to be in dispute as to the status of plaintiff's claim for refund of FUTA taxes for the first two quarters in 1975. Plaintiff contends that its claim has not been formally allowed. The Government says the claim *has* been allowed but will not be refunded until the status of plaintiff's 1975 tax year is finally determined. We can only take this as a concession by the Government that the claim has been allowed and so will consider the FUTA claim for the first two quarters of 1975 as allowed. The bulk of plaintiff's claim, for periods after July 1, 1975, through June 30, 1978, has not been allowed.

We note, preliminarily, that the facts as stated above dealing with plaintiff's relation to the waiters are taken from an affidavit submitted by Bruce Ellis, plaintiff's vice president and treasurer. Defendant has attempted to controvert those facts and create a factual dispute by offering a counteraffidavit sworn to by Mr. Oravecz.

However, that affidavit does not assert any specific facts but merely offers the generalized conclusion that—

> * * * the facts which I had personally observed while at plaintiff's place of business were inconsistent with the facts which I understood to be the basis for the 1951 and 1958 private letter rulings. Further, I concluded that the facts underlying plaintiff's case were substantially identical to those contained in Rev.Rul. 69–624, 1969–2 Cum.Bull. 187.

We believe this is insufficient to controvert plaintiff's sworn facts and does not raise a factual dispute. Defendant is required to set forth *specific facts*, in response to plaintiff's affidavit, showing there is a genuine issue for trial. Ct.Cl. Rule 101(f). *Foote Mineral Co. v. United States*, Ct.Cl., 654 F.2d 81 (1981); *Bryant v. United States*, 216 Ct.Cl. 409, 410–11 (1978); *Pacific Far East Line, Inc. v. United States*, 206 Ct.Cl. 378, 385, 513 F.2d 1355, 1359 (1975); *Hartwig v. United States*, 202 Ct.Cl. 801, 810–11, 485 F.2d 615, 620–21 (1973). As defendant has failed to do so, we will take the facts as sworn to by plaintiff's vice president to be true for the purposes of this motion.

We now turn to the crux of the instant motion: whether plaintiff is entitled to relief solely because of the relief provisions of section 530 of the Revenue Act of 1978. That statute provides in part as follows:

> Sec. 530 Controversies Involving Whether Individuals Are Employees for Purposes of the Employment Taxes.
>
> (a) Termination of Certain Employment Tax Liability For Periods Before 1980.—
>
> (1) In general.—If—
>
> (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period ending before January 1, 1980, and
>
> (B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,

then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee. [Pub.L. No.95–600, 92 Stat. 2885 (1978).]

As the section title indicates, section 530 was aimed at controversies between taxpayers and the IRS as to whether certain individuals had the status of employees of the taxpayers. In the late 1960's, the IRS increased its enforcement of the employment tax laws. This led to many controversies with taxpayers when IRS proposed to reclassify individuals from independent contractor status to employee status and the taxpayers complained that the reclassifications involved changes in IRS's position on how the common law rules applied to particular individuals. During the 1976 Tax Reform Act conference, House and Senate conferees requested that IRS "not apply any changed position or any newly stated position in this general subject area to past, as opposed to future taxable years" until the Joint Committee on Taxation had a chance to study the problem. Congress then went further by enacting section 530 wherein interim relief was provided to taxpayers involved in such controversies so that Congress would have more time to formulate a comprehensive solution. Committee Print 95–104, 95th Cong., 2d Sess. 8 (1978) (House Ways and Means Committee); H.R.Rep.No.95–1748, 95th Cong., 2d Sess. 3–4 (1978); S.Rep.No.95–1263, 95th Cong., 2d Sess. 209–10 (1978), *reprinted in* [1978] U.S.Code Cong. & Ad.News 6761, 6972–73; General Explanation of the Revenue Act of 1978, Joint Committee on Taxation Print, 95th Cong., 2d Sess. 300–01 (1979).

■ With this background in mind, we may approach the first issue, which is whether under section 530(a)(1)(A) plaintiff "treated" the waiters as employees. The dispute between the parties turns on what is meant by the word "treat" in the statute. Plaintiff contends that the word "treat" refers to treatment in the day-to-day sense.

There are two difficulties with this interpretation. First, we are not clear on how plaintiff would distinguish this test from the ordinary test of whether under the common law the waiters are employees or independent contractors. That is, it would seem that if plaintiff could show that it treated the waiters as independent contractors in the day-to-day sense it would have proven that it never had any employment tax liability with regard to them and hence would not be in need of the relief provisions of section 530. However, assuming plaintiff's test is in some sense different from the ordinary common law test of employment, there is a further difficulty. The language of the statute specifically says, *"for purposes of employment taxes,* the taxpayer did not treat * * *."* (Emphasis added.) Hence, the statute is not focusing on day-to-day treatment, but rather looks specifically to treatment for employment tax purposes.

■ Defendant's position is that set forth in Rev.Proc. 78–35, 1978–1 Cum.Bull. 536 § 3.02, which sets forth a definition of the word "treat" as used in section 530. Section 3.02 asserts that a taxpayer will be considered as having treated an individual as an employee for all periods where (1) it withheld FICA tax from the individual's wages, or (2) it filed an employment tax return for the period with respect to the individual. An exception to (2) is made where the return is an amended or delinquent tax return filed as a result of Service compliance procedures. That exception only applies for the particular period which is the subject of the compliance procedures and will not protect the taxpayer in subsequent periods. While this definition may be adequate for some cases, it cannot apply to the present case.

The problem with the definition in section 3.02 stems from the different forms of tax litigation. Taxpayers may seek determinations either by suing directly in the Tax Court without paying the deficiency or by suing for a refund in United States district courts or in the Court of Claims. In order to sue for a refund, of course, the taxpayer must first pay the tax. The difficulty here is that if the taxpayer chooses the refund route and pays the tax, he will run afoul of section 3.02 which makes his payment of the employment tax a bar to the relief of section 530. Nevertheless, we feel certain that the relief provided by section 530 is available in the refund situation for three reasons.

■ First, and most obvious, any interpretation of the statute which makes relief depend on whether the taxpayer sued in the Tax Court, as opposed to district court or the Court of Claims, would be without rational basis and hence unacceptable.

Second, a court has already applied section 530 to give relief in a refund suit. *American Institute of Family Relations v. United States,* 79–1 U.S.T.C. ¶ 9364 (C.D. Cal.1979).

Third, the legislative history indicates that taxpayers in plaintiff's position were to be accorded the relief of section 530. This was apparently clear to the IRS since the particular legislative history is incorporated in Rev.Proc. 78–35 § 3.04, which states in part:

> .04 *Refund, Credits, and Abatements*
>
> Relief under section 530(a)(1) of the Act is available to taxpayers who are under audit by the Service or who are involved in administrative (including Appellate) or judicial processes with respect to assessments based on employment statute[4] reclassifications. Relief also is extended to any claim for a refund or for a credit of any overpayment of an employment tax resulting from the termination of liability under section 530(a)(1), provided the claim is not barred on the date of enactment of this provision (November 6, 1978) by any law or rule of law.

> \*    \*    \*    \*    \*    \*

Taxpayers who have entered into final closing agreements under section 7121 of the Code or compromises under section 7122 with respect to employment status

---

4. Probably should be "status."

controversies are ineligible for relief under the Act, unless they have not completely paid their liability. Thus, for example, a taxpayer who has agreed to or compromised a liability for an amount which is to be paid in installments, but who still has one or more installments to pay, is relieved of liability for such outstanding installments. Taxpayers who settled employment status controversies administratively with the Service on any basis other than section 7121 or 7122 of the Code or who unsuccessfully litigated such cases are eligible for relief, provided their claims are not barred by the statute of limitations or by the application of the doctrine of *res judicata*. However, an unsuccessful litigant in an employment status case who fulfills the Act's requirements, can avoid collection of any unpaid employment tax liabilities, regardless of the doctrine of *res judicata*. Thus, unpaid judgments will also be abated if section 530(a)(1) of the Act applies.

This is taken practically verbatim from the legislative history. *See* Committee Print 95–104, *supra* at 11–12; H.R.Rep.No.95–1748, *supra* at 5–6; General Explanation of the Revenue Act of 1978, Joint Committee on Taxation Print, *supra* at 303. *Cf.* S.Rep. No.95–1263, *supra* at 211, *reprinted in* [1978] U.S.Code Cong. & Ad.News at 6974 (also supports section 3.04). We note that the *American Institute* case, *supra*, also cites this legislative history. We regard this legislative history as crucial and its importance in construing the statute is indicated by its inclusion in Rev.Proc. 78–35, although the language of the statute would not require it.

We take section 3.04 as definitively setting forth those taxpayers entitled to relief under section 530. This must be incorporated into the interpretation of the word "treat." That is, taxpayers who would otherwise be considered as having "treated" individuals as employees under section 3.02 will be deemed not to have "treated" such individuals as employees if the taxpayer would be entitled to relief according to section 3.04. In other words, section 3.04 overrides section 3.02. Plaintiff here was involved in "administrative * * * or judicial processes with respect to assessments based on employment [status] reclassifications." Plaintiff is precisely the type of taxpayer to whom section 530 was directed. Hence, for the period covered by its refund claim, it will not be considered as having treated the waiters as employees.

We admit that our treatment of section 3.04 does result in some difficulty in statutory interpretation. But the original difficulty was caused by the absence of any statutory definition of "treat," the congressional insistence on the substance of the legislative history set forth in section 3.04, and the absence of any provision reconciling section 530(a)(1)(A) and the congressional intent as set forth in section 3.04. Our solution does, in essence, append section 3.04 to the statute and then construes it with section 530(a)(1)(A). Nevertheless, although we recognize the difficulty in this, we believe it is the proper solution. We think defendant cannot fairly object to this since after all we take the legislative history as set forth in defendant's revenue procedure. The same result would obtain were we to try to resolve the conflict between Rev.Proc. 78–35 §§ 3.02 and 3.04.

Defendant, however, argues that plaintiff had acquiesced in the Service's position. It points out that plaintiff waited so long to file its refund claim that the statute of limitations ran on part of it. The Government argues that plaintiff is just trying to "cash in" on the unexpected relief provisions. Such acquiescence distinguishes the *American Institute* case in its view since plaintiff in that case waited for IRS to assess an additional tax and then paid under protest, hence negating an inference of acquiescence. Plaintiff argues that it let the statute of limitations run by mistake. It points out that it filed its claim for refund on September 15, 1978, two months before the enactment of section 530, and that its refund claim took months to prepare, hence negating any inference of acquiescence or that it is just trying to "cash in." We may sum up defendant's argument on this point as follows: (1) section 530

gives relief only to taxpayers engaged in controversies with the IRS over employment status reclassifications; (2) plaintiff had acquiesced in the Service's view, thus ending any controversy; (3) therefore plaintiff is entitled to no relief. Plaintiff responds that it kept the controversy alive by its refund claim.

We think the point can be resolved once again by referring to the legislative history that is set forth in Rev.Proc. 78–35 § 3.04. It indicates that section 530 was to give relief not only to taxpayers who have already agreed to their liability, but also to those who have lost a lawsuit on the matter to the extent they have not yet paid their liability. We believe it far clearer that there is no controversy as to such taxpayers, since the controversy has been explicitly resolved, than it is as to plaintiff. Where reclassification by IRS has occurred, so long as the statute of limitations has not run as to particular periods, the taxpayer may sue for refund. Until that time, the controversy is alive for purposes of negating "treatment" under section 530(a)(1)(A). However, the more important point is that section 3.04 shows that the class of taxpayers entitled to relief is broader than those who are engaged in active controversy with the IRS.

We note, furthermore, that section 530(a)(4) allows claims for refunds not barred by the statute of limitations at the time of the enactment of section 530 to have at least one more year in which to file. We believe this contains implicit recognition of the existence of those who would not have filed for a refund but for the enactment of section 530. This is made explicit by section 3.04 which says that relief is extended to any claim for a refund of an employment tax resulting from the termination of liability under section 530(a)(1). To put it bluntly, taxpayers are *invited* to "cash in" on the unexpected relief provisions.

Defendant has also offered us two further matters in supplemental submissions. The first is some legislative history from a Senate Report, which states:

In addition, the bill prevents the Internal Revenue Service from reclassifying certain individuals as employees for purposes of Federal income tax withholding, Social Security taxes and unemployment taxes. Individuals (or classes of individuals) who may not be reclassified are those whom the taxpayer consistently has treated in good faith as independent contractors for employment tax purposes. The taxpayer shall be deemed to have acted in good faith only if all Federal tax returns (including information returns) required to be filed by the taxpayer were filed on a basis consistent with the taxpayer's treatment of such individuals as independent contractors and the taxpayer treated such individuals as independent contractors in reasonable reliance under one or more of four tests. [S.Rep.No.95–1263, 95th Cong., 2d Sess. 210 (1978), *reprinted in* [1978] U.S.Code Cong. & Ad. News 6761, 6973.]

Defendant apparently offers this to show that plaintiff cannot meet the "treatment" requirement because the above paragraph indicates that the taxpayer must file *all* federal tax returns on a basis consistent with the taxpayer's treatment of the individuals as independent contractors. However, this legislative history must be viewed in light of the bill it was commenting on which differed materially from section 530 as enacted. The bill addressed was H.R. 13511, 95th Cong., 2d Sess. § 501 (1978). That earlier version of section 530 had a requirement that *all* federal tax returns be filed on a basis consistent with the taxpayer's treatment of an individual as an independent contractor in order to be entitled to relief. In section 530 this requirement has been relaxed to apply only to periods after December 31, 1978. This legislative history from the Senate Report, therefore, is no longer accurate when applied to section 530 as enacted.

The second item defendant has submitted is a case dealing with section 530, *Ambassador Life Ins. Co. v. United States*, No. CIV–79–396–W (W.D.Okl. Apr. 2, 1981). That case contains the following language: "As

a prerequisite to gaining its protection, Section 530 requires that the individuals in question be consistently treated as not being employees. The taxpayer in this case has treated the individuals as employees in some instances and therefore is unable to gain the protection of Section 530." The court then cites the legislative history quoted above. As we have said, we do not consider that legislative history as accurate with regard to section 530 as enacted. We also find the court's holding not to be helpful here. The above two sentences constitute its entire discussion of section 530. We cannot tell what standard it used to define the term "treat" in the statute and so we cannot tell what it has held with respect thereto.

The final issue is whether plaintiff had a reasonable basis for not treating the waiters as employees. The statute contains three "safe haven" provisions under which the reasonable basis test can be satisfied, although these safe havens are not the only way to satisfy the reasonable basis requirement. Rev.Proc. 78–35 § 3.01; Committee Print 95–104, *supra* at 11; H.R.Rep.No.95–1748, *supra* at 5; General Explanation of the Revenue Act of 1978, Joint Committee on Taxation Print, *supra* at 302–03. Section 530(a)(2) provides:

(2) Statutory standards providing one method of satisfying the requirements of paragraph (1).—For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

Plaintiff asserts that it falls under (A) and (C). However, there is some difficulty here since the language does not fit the refund situation very well. It may be argued that the language *never* applies to the refund situation since the taxpayer *pays* the employment taxes for the period in dispute and so does not rely on *anything* to treat the individuals as not being employees. Since we believe plaintiff has established a reasonable basis without regard to the safe haven provisions, we prefer to rest on that ground.

Plaintiff received a favorable letter ruling with regard to the independent contractor status of the waiters in 1951. That letter ruling sets forth the facts with regard to plaintiff's relationship to the waiters substantially as we have set them forth above and then concludes: " * * * your firm does not exercise or have the right to exercise over the services of the waiters sent out to assist your various customers, the degree of direction and control necessary to establish the relationship of employer and employee between your firm and such individuals." The 1958 letter ruling reaffirms the status of the waiters as independent contractors. In 1971, no assessment was made with regard to a particular waitress after the Service was shown copies of the letter rulings of 1951 and 1958. Defendant has not told us why plaintiff had no reasonable basis for adopting the position the IRS took repeatedly over so many years, and changed only at the initiation of the instant controversy. While defendant may argue that IRS takes positions with no reasonable basis, it has not so argued in the instant case, nor would such an argument succeed. Plaintiff has a reasonable argument that it furnished waiters only for the convenience of the customers and so did not have the right to exercise control over the services of the waiters. Finally, we note that the "reasonable basis" test is to be construed liberally in favor of the taxpayer. *American Institute of Family Relations v.*

*United States, supra*; Rev.Proc. 78–35, *supra*, § 3.01; H.R.Rep.No.95–1748, 95th Cong., 2d Sess. 5 (1978). Weighing all this together, we must conclude that plaintiff has satisfied the reasonable basis test.

Accordingly, upon consideration of the briefs and exhibits and after oral argument, we grant plaintiff's motion for summary judgment. The case is remanded to the trial division pursuant to Ct.Cl. Rule 131(c) for a determination of the amount to which plaintiff is entitled.