**UNITED STATES of America, Appellee,**

v.

**Roderick J. MacKENZIE, Malcolm L. MacKenzie, and David H. MacKenzie, Inc., Appellants.**

**Nos. 216, 217, Dockets 85–1023, 1024.**

United States Court of Appeals, Second Circuit.

Argued Sept. 18, 1985.

Decided Nov. 20, 1985.

Opinion on Denial of Rehearing Jan. 21, 1986.

Jacob D. Zeldes, Bridgeport, Conn. (David P. Atkins, Zeldes, Needle & Cooper, Bridgeport, Conn., of counsel), for appellants Roderick J. MacKenzie and David H. MacKenzie, Inc.

Andre L. Nagy, Bridgeport, Conn., for appellant Malcolm L. MacKenzie.

Elliot R. Warren, Asst. U.S. Atty. (Alan H. Nevas, U.S. Atty. for the D. of Conn., New Haven, Conn., of counsel; Allan Abare, Law Student Intern, on the brief), for appellee.

Before OAKES and NEWMAN, Circuit Judges, and POLLACK, Senior District Judge.[*]

OAKES, Circuit Judge:

This is an appeal from convictions for conspiracy to defraud the United States, filing fraudulent tax returns, and aiding and assisting the filing of fraudulent returns, all in connection with paying employees without withholding taxes. Appellants contend that the underlying withholding statute and regulations are unconstitutionally vague, that a provision of the Revenue Act of 1978 offers a "safe haven" defense that either barred this prosecution or should have been submitted to the jury; that the jury was improperly charged that deliberate ignorance would satisfy the requirement of knowledge; that their motions to suppress evidence obtained by virtue of civil summonses and other evidence obtained allegedly in violation of the plain view doctrine during a search executed pursuant to warrant were wrongly denied; and that the evidence regarding one false filing count and all of the aiding and assisting counts was insufficient. After a jury trial, appellants David H. MacKenzie, Inc., Roderick J. MacKenzie, and Malcolm MacKenzie were all convicted of conspiracy, 18 U.S.C. § 371 (1982); Roderick MacKenzie was convicted of eleven counts of false filing of Forms 941, employer's quarterly tax returns, 26 U.S.C.

---

* Of the Southern District of New York, sitting by designation.

§ 7206(1) (1982); and both MacKenzies were convicted of five counts of aiding and assisting the filing of employees' false tax returns, 26 U.S.C. § 7206(2) (1982). The United States District Court for the District of Connecticut, Ellen Bree Burns, Judge, sentenced the corporation to a $10,000 fine; Roderick MacKenzie to a $10,000 fine, three years' incarceration with all but thirty days suspended on the conspiracy count and one year's probation on each of the other counts, the sentences on all counts to be concurrent; and Malcolm MacKenzie to three years with all but six months suspended and two years' probation on the conspiracy count and on each of the aiding and assisting counts, all to run concurrently. We affirm.

### FACTS

Roderick MacKenzie was president and Malcolm general manager of the family painting company, David H. MacKenzie, Inc. During the tax years in question, 1976–1979, the corporation paid a number of its full-time painters, in addition to their usual salaries, straight time for overtime and holiday work rather than the time and one-half or double time required by the union contracts, although the union painters were paid an additional sum more or less equalling the amount which the union contract required an employer to pay to cover employee benefits and insurance. These payments were made off the books, by separate check, and separate records of them were kept. No income or social security taxes were withheld by the corporation from these overtime or holiday work payments, nor were the payments reported to the Internal Revenue Service. The company accountant was told that the company was using more independent contractors; the wages of these "independent contractors" were posted to a materials purchased account or, after the accountant became suspicious, to a labor purchase account on a ledger sheet which, along with the separate payroll records, was withheld from the IRS.

The alleged conspiracy also involved another scheme as to which the jury could properly have found that the company contracted with certain nonunion painters to do work under the name of the "MacKenzie Co." The MacKenzie Co. was headed by one Dennis McDevitt, a former self-employed subcontractor, who acted as supervisor of nonunion employees hired by the company. Disbursements for work performed by the nonunion painters employed by the MacKenzie Co. were not handled through the corporate accounting system. Rather, the nonunion painters were paid an hourly wage, in cash, by McDevitt, who received a check from David MacKenzie, Inc., for this purpose. The wages paid to the McDevitt nonunion painters were not reported to the IRS, nor were income taxes or social security taxes withheld. Only after it appeared that the IRS might discover the unreported payroll did the MacKenzies notify nonunion employees that they could, if they chose, go on the payroll. For those who did not so choose, appellants prepared Forms 1099, which must be filed if an independent contractor is paid $600 or more in a calendar year, *see* 26 U.S.C. § 6041(a) (1982), Treas.Reg. § 1.6041–1 (1985), for the first time for calendar year 1979, after the corporation had come under IRS investigation.

By underreporting the payroll to the IRS, the corporation avoided significant federal income and FICA (social security) taxes for calendar years 1976, 1977, 1978, and 1979. The five aiding and assisting counts related to three separate employees who falsified their returns by understating their income for various tax years during the period in question.

### DISCUSSION

The concept of requiring withholding from wages of amounts to be applied against income tax liability involves making employers tax collectors with respect to the forthcoming tax obligation of their employees. 8A J. Mertens, *The Law of Federal Income Taxation* § 47A.03, at 10 (1978). The existence of an employer-employee relationship is necessary for there to be any duty of withholding on the one hand or liability to be subjected to withholding on the other. Congress defined certain people as employees in 26 U.S.C. § 3401(c) (1982), and made clear the common law definition would govern who would be considered an employee. *See* 26 U.S.C. § 3121(d)(2) (1982). Treasury Regulation § 31.3401(c)–1(b) (1985) states specifically that the test is whether "the person for whom services are performed has the right to control and direct the individual who performs the ser-

vices, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished." [1] The factors mentioned in the regulations are among those that section 220 of the *Restatement (Second) of Agency* (1957) suggests for determining the existence of a master-servant relationship. It is obvious that in drawing the line between who is an employee and who is an independent contractor there will be some doubtful cases, a fact the regulations recognize in acknowledging that whether the relationship exists will be determined "upon an examination of the particular facts of each case." Treas.Reg. § 31.-3401(c)–1(d) (1985).

It is from the fact that there are doubtful cases that appellants seek to make their strongest arguments. They point out that over the years decisions about whether a person is an employee or an independent contractor have been "inconsistent and unpredictable," and they cite examples. They point out that the statutory employees described in 26 U.S.C. § 3121(d) and Treasury Regulation § 31.3121(d)–1(d) (pertaining to FICA) are not discussed under 26 U.S.C. § 3401 (pertaining to income tax) so that, they say, a worker might be an employee under one statute but not the other. And they point to the statutory exceptions from the employment tax laws contained in, e.g., 26 U.S.C. § 3402(n) and 26 U.S.C. § 3121(b). The complexity of all these statutes and regulations, they argue, created endless confusion about what an employer's obligations were and in what circumstances they applied or did not apply. Finally, they argue that the Government has brought but one other criminal prosecution for willful misclassification of workers, *United States v. McLaughlin*, 663 F.2d 949 (9th Cir.1981), and contend that even the Government is confused about what the law requires, noting that its counsel was unable to state at trial precisely when Dennis McDevitt ceased being an independent contractor and his painters became employ-

ees. The confusion surrounding the statutory requirements in question, appellants claim, makes it impossible for employers to know whether they are obeying the law, and creates the possibility of arbitrary enforcement, making a vagueness challenge appropriate. Appellants remind us that the Supreme Court has only recently reaffirmed the void-for-vagueness doctrine, requiring "that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

Moreover, they claim, Congress acknowledged that the law in the area was hopelessly confused when it enacted Section 530 of the Revenue Act of 1978, reading in pertinent part as follows:

(a) Termination of Certain Employment Tax Liability for Periods Before 1980.—

(1) In General.—If—

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and

(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,

then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

(2) Statutory Standards Providing One Method of Satisfying the Requirements of Paragraph (1).—For purposes of paragraph (1), a taxpayer shall in any case be

---

**1.** The regulations continue:

In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily

present in every case, are the furnishing of tools and the furnishing of a place to work to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is not an employee. Treas.Reg. § 31.3401(c)–1(b) (1985).

treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

(3) Consistency Required in the Case of Prior Tax Treatment.—Paragraph (1) shall not apply with respect to the treatment of any individual for employment tax purposes for any period ending after December 31, 1978, if the taxpayer (or a predecessor) has treated any individual holding a substantially similar position as an employee for purposes of the employment taxes for any period beginning after December 31, 1977.

Revenue Act of 1978, Pub.L. No. 95–600, § 530, 92 Stat. 2763, 2885–86 (codified at 26 U.S.C. § 3401 note (1982) (as amended)). Appellants particularly refer us to the purpose of the adoption of that section:

The agreement terminates pre-1979 employment tax liabilities of taxpayers who had a reasonable basis for treating workers other than as employees and who file all required federal tax returns for periods after December 31, 1978; (2) extends relief prospectively through 1979 for taxpayers having a reasonable basis for their classification of workers; and (3) prohibits the issuance of regulations and Revenue Rulings on common law employment status before 1980.

H.R.Conf.Rep. No. 1800, 95th Cong., 2d Sess. 271, *reprinted in* 1978 U.S.Code Cong. & Ad.News 6761, 7198, 7266, and to *Ridgewell's, Inc. v. United States,* 655 F.2d 1098 (Ct.Cl.1981), where the United States Court of Claims said:

As the section title indicates, section 530 was aimed at controversies between taxpayers and the IRS as to whether certain individuals had the status of employees of the taxpayers. In the late 1960's, the IRS increased its enforcement of the employment tax laws. This led to many controversies with taxpayers when IRS proposed to reclassify individuals from independent contractor status to employee status and the taxpayers complained that the reclassifications involved changes in IRS's position on how the common law rules applied to particular individuals. During the 1976 Tax Reform Act conference, House and Senate conferees requested that IRS "not apply any changed position or any newly stated position in this general subject area to past, as opposed to future taxable years" until the Joint Committee on Taxation had a chance to study the problem. Congress then went further by enacting section 530 wherein interim relief was provided to taxpayers involved in such controversies so that Congress would have more time to formulate a comprehensive solution.

*Id.* at 1101.

■ We agree that there are doubtful cases and doubtless Congress, when it adopted section 530, intended to protect from civil liability those who reasonably made a determination that a given individual was an independent contractor rather than an employee. But this is not to say that there was any doubt—much less a reasonable one—in this case. First, as to the union painters who were paid, without withholding, for overtime and holiday work, it is clear that they were employees, since they were paid as such—with withholding done—for their regular weekly hours, and no separate arrangements were made for their overtime work. Starting in late 1975, they simply began to be paid off the payroll without withholding for weekend and holiday work, an arrangement that they were obviously asked to accept because it enabled the company to save money and which they accepted because they themselves were getting approximately the same net as they would on union scale after withholding. While the company's accountant was told that the company was using independent contractors, he was not told that these in fact were regular employees, nor was he consulted as to the separate payroll sheets or the absence of W-2 or 1099 forms. Indeed, some workers re-

quested and received permission to be paid off the books not only for overtime but for certain regular working hours, a request that resulted in two or three of them being prosecuted (along with the MacKenzies) for falsifying their own returns, as to which Malcolm and Roderick were held to have aided and assisted. That appellants were well aware that these payments were inappropriate, not to say downright illegal, was clear from the fact that the payments were recorded on separate books, concealed from the company's own accountant, and (in 1979) made in cash or by separate checks made payable to "Cash" rather than to painters by name.

While the case was not as crystal clear, perhaps, as to the nonunion workers who had been employed by Dennis McDevitt in the MacKenzie Co., the case for the Government was nevertheless a strong one. Malcolm directed McDevitt to hire specific workers and overruled McDevitt to grant raises to workers. Both Malcolm and Roderick verified to financial institutions that McDevitt and some of his men were employees of the corporation. They also kept track of the earnings of the nonunion painters. Through the period of operation McDevitt received a gross payroll check for all nonunion workers and distributed the money in cash; no withholding was done. Only when McDevitt, who had not filed personal income tax returns, was told by his new wife in 1979 that she was going to file a return, did Malcolm put McDevitt, and later the nonunion workers, directly on the MacKenzie Co. payroll. With respect to neither group of workers did appellants, until late 1979 or early 1980, prepare the 1099 forms consistent with the "independent contractor" status they allegedly thought their workers had.

█ Generally speaking, a challenge to the tax laws on vagueness grounds must be specific rather than facial. *See United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975) ("vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand"); *see generally* Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U.Pa.L.Rev. 67 (1960). That the statute and regulations may present some doubtful cases does not mean that they are void for vagueness where the

particular case at hand is not doubtful. As held in *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926),

> [T]he decisions of the court upholding statutes as sufficiently certain, rested upon the conclusion that they employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them, or a well-settled common law meaning, notwithstanding an element of degree in the definition as to which estimates might differ.

(Citations omitted.) In this case the statutes as amplified by the Treasury Regulations comprehensively define "employee" and "wages" and specifically refer to the common law use of those terms. Hypothetical situations are irrelevant. *United States v. Irwin*, 354 F.2d 192, 196 (2d Cir. 1965), *cert. denied*, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966). Appellants here fail to state any plausible claim that, as applied to them, the statute and regulations here were impermissibly vague.

Moreover, the requirement of willfulness in the criminal tax laws has a bearing on an analysis of vagueness. As the Supreme Court said in *United States v. Ragen*, 314 U.S. 513, 524, 62 S.Ct. 374, 378, 86 L.Ed. 383 (1942): "On no construction can the statutory provisions here involved become a trap for those who act in good faith. A mind intent upon willful evasion is inconsistent with surprised innocence." *See also United States v. Bishop*, 412 U.S. 346, 360–61, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973).

Nor do appellants gain by the enactment of section 530. The enactment of that statute does not disclose any intent to preclude criminal prosecutions of violations of the withholding laws; the silence of the congressional history in this regard is significant. *See* L. Tribe, *Constitutional Choices* 41–42 (1985). We agree essentially with the United States Court of Claims' summary of the history of the passage of section 530 set forth in *Ridgewell's, Inc.*, 655 F.2d at 1101, as quoted *supra*. The point of the section, as the Government's brief points out, is that in the area of withholding requirements a good faith taxpayer who was determined to have made an honest mistake might be liable for enormous sums that should have been withheld

from employees' paychecks but were instead paid to the workers. Thus a limited "safe haven" was set up for those employers who manifested a "reasonable basis" for their treatment of employees as independent contractors. But as stated in the Senate report, not every employer can qualify for the safe haven; "a taxpayer will not be considered to have acted in good faith if his treatment of individuals as independent contractors would, on the basis of the pertinent facts and circumstances, constitute negligence, intentional disregard of rules and regulations, or fraud within the meaning of section 6653 of the Code." S.Rep. No. 1263, 95th Cong., 2d Sess. 211, *reprinted in* 1978 U.S.Code Cong. & Ad.News 6761, 6974. Thus, Congress did not intend an absolute safe haven in section 530 even with respect to civil liability and could hardly have intended to abate criminal prosecutions where there is not only a lack of good faith but also deliberate tax evasion with concealed records and with intent to defraud. We note that the suggestion that section 530 provided a defense in a prosecution for failure to withhold has been rejected. *United States v. McLaughlin*, 663 F.2d at 952.

Perhaps appellants' strongest argument, and certainly an argument very carefully considered by the district court, was that they were at least entitled to an instruction under section 530 that would require the jury to apply the factors outlined in the "safe haven" law. Such instructions were duly requested. We agree with the district court's conclusion that no section 530 instruction was needed; the requirement of specific intent in this crime negates the availability of a section 530 defense. The appellants argue that such an interpretation does away with the *actus reus* requirement for the offense, *see United States v. Muzii*, 676 F.2d 919, 920 (2d Cir.) (*mens rea* alone insufficient to impose criminal sanction; *actus reus* also required), *cert. denied*, 459 U.S. 863, 103 S.Ct. 139, 74 L.Ed.2d 118 (1982), and that if their conduct was objectively "reasonable," it would be improper to prosecute them even if subjectively they knew their conduct violated the statute. It seems more correct, however, to say that there is always an *actus reus* when employers fail to withhold, but that the "safe haven" law in effect deems that where an employer acts in a reasonable manner without knowledge

that he is violating the law, he does not have *mens rea.*

In any event, the context of section 530 is civil. As we have previously pointed out, Congress was concerned that employers acting reasonably and without intent to violate the law not be hit with heavy civil penalties. It surely intended no safe haven for bad faith or fraudulent employers. Moreover, the failure to file 1099s in this case would seem to negate any likelihood that appellants were acting "consistently" in treating their workers as independent contractors; they are, therefore, not among the employers that Congress intended to protect. *See* S.Rep. No. 1263 at 210, *reprinted in* 1978 U.S.Code Cong. & Ad. News at 6973.

Nor was there in this case any colorable evidence of reasonable reliance on the part of the appellants. The appellants claim this case is like *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir.1974), where the court reversed a conviction for income tax evasion despite the fact that a jury had concluded that defendant had intended to violate her obligations under the Tax Code. To the court it was not clear that she was subject to taxation. *Critzer* was cited favorably in *United States v. Garber*, 607 F.2d 92, 98–99 (5th Cir.1979) (en banc) (defendant's actual intent is irrelevant when the law is so uncertain). We rejected the reasoning of *Garber* in *United States v. Ingredient Technology Corp.*, 698 F.2d 88, 96–97 (2d Cir.), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983), because the inevitable logic of the decision requires that if the tax laws are uncertain an indictment should be dismissed, regardless whether the taxpayer acted in good faith. *Id.* at 97. We found in *Ingredient Technology* that there was no evidence that the principal individual defendant or anyone else employed by the corporate defendant genuinely thought that what he was doing was lawful and proper; rather, the conduct of the individuals indicated a subjective belief in the unlawfulness of the conduct. The same is true here. This is not to say that if the requirements in issue under the Tax Code are so muddled that the taxpayer is genuinely uncertain about their applicability, *Critzer* would not be persuasive. But no such uncertainty is involved on the facts of this case.

We nevertheless insisted in *Ingredient Technology* that the court's instructions

concerning willfulness be proper. *Id.* Here the instruction on willfulness is questioned. The instruction as given is set forth in the margin.[2] We note parenthetically that it is essentially in the language of the pattern instruction given in 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 14.09 (3d ed. 1977), except that the last two sentences elaborate upon the last sentence of the pattern instruction, to the defendants' advantage. Indeed, the court specifically charged that the adage that ignorance of the law is no excuse did *not* apply because Roderick MacKenzie could be convicted only "if he acted with the deliberate intent to avoid that which he knew the law required him to do." Moreover, the jury was charged that he did not need to have "actually investigated the law to determine his duty." But appellants claim that in a tax case a deliberate ignorance instruction dilutes the applicable knowledge standard, arguing that *United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976) (per curiam), and *United States v. Bishop,* 412 U.S. at 360, 93 S.Ct. at 2017, require affirmative proof of a defendant's actual knowledge of the existence and applicability of identifiable Tax Code obligations, a requirement that is negated by the guilty knowledge charge as given in this case. In effect, appellants argue, the charge constituted a dramatic shifting of the burden of proof within *Francis v. Franklin,* —— U.S. ——, ——, 105 S.Ct. 1965, 1972, 85 L.Ed.2d 344 (U.S. Apr. 29, 1985), and *Sandstrom v. Montana,* 442 U.S. 510, 524, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979). Appellants claim that decisions supporting a conscious avoidance charge involve defendants' knowledge of facts, not of law. Thus, appellants argue, the jury must make a preliminary determination of the degree of awareness possessed by the taxpayer as to his legal obligations with respect to a return; only actual knowledge of the precise dictates of the law is adequate, citing *United States v. Brooksby,* 668 F.2d 1102, 1104–05 (9th Cir.1982).

■ But the tax statute standard set forth in *Bishop,* 412 U.S. at 360, 93 S.Ct. at 2017 (" 'willfully' in these statutes generally connotes a voluntary, intentional violation of a known legal duty"), is designed to separate the purposeful violator from the "well-meaning, but easily confused, mass of taxpayers," *id.* at 361, 93 S.Ct. at 2017, to avoid penalizing " 'innocent errors made despite the exercise of reasonable care.' " *Id.* at 360–61, 93 S.Ct. at 2017 (quoting *Spies v. United States,* 317 U.S. 492, 496, 63 S.Ct. 364, 366, 87 L.Ed. 418 (1943)). Here the charge clearly informed the jury that actual knowledge was required and that recklessness was not adequate to prove willfulness. It eliminated no elements of the offense. *Cf. Brooksby,* 668 F.2d at 1104–05 (failure to instruct that willfulness was an essential element of crime prejudiced defendant). While the appellants argue that the trial court itself confused the concepts of knowledge of both facts and law, we think the opposite is the case. The deliberate ignorance instruction included a reference to "willful blindness to the existence of the fact," which as applied here would simply mean that the MacKenzies could not ignore the fact that their employees were employees and not independent contractors. By saying that the adage that ignorance of the law is no excuse was *not* applicable, the court clearly met the requirements of *Pomponio* and *Bishop* by making clear to the jury that knowledge of the law was distinct from knowledge of facts. Such knowledge of the law was inferable and proven from the fact that appellants did indeed pay withholding on behalf of the union employees during their regular work weeks. Defendants' backgrounds (each had a college degree, Roderick in economics and Malcolm in business) also demonstrate the likelihood they knew what the law required.

---

**2.** The element of knowledge may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him. A finding beyond a reasonable doubt of a conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact. '

It is entirely up to you as to whether you find any deliberate closing of the eyes and the inferences to be drawn from any such evidence. Although knowledge may be inferred from the defendant's behavior, you must still find that he had actual knowledge. However, a showing of mistake, negligence, carelessness, recklessness, or even gross negligence is not sufficient to support a finding of either willfulness or knowledge.

*Francis* and *Sandstrom,* the burden-of-proof-shifting cases, are also clearly inapposite, since they involved presumptions, while the instruction here merely created a permissive inference. That the instruction as given was called for on the facts of this case is clear from the defense claims: that Malcolm MacKenzie did not know that the separate check payments were wages rather than payments to independent contractors, but merely assumed that when he did not withhold taxes, the recipient of such money automatically became an independent contractor; and that the MacKenzies did not know the separate payroll registers kept by the company bookkeeper existed, much less that they were being concealed from the firm's accountant and the IRS.

■ Appellants argue that the court improperly denied their pretrial motion to suppress evidence obtained through IRS civil summonses under 26 U.S.C. § 7602 (1982), because the summonses were issued after an institutional decision was made, on April 11, 1980, to abandon civil sanctions in favor of criminal prosecution and because the IRS delayed referral of the case to the Justice Department for prosecution so as to be able to gather additional evidence, all of which was in violation of *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964), held that the IRS "must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed ...," *quoted in LaSalle,* 437 U.S. at 313–14, 98 S.Ct. at 2365–66. While it is not improper for the IRS to issue a civil summons when it is also considering a criminal prosecution, unless it is issued after the IRS has recommended to the Justice Department initiation of a criminal prosecution, *LaSalle* does allow for a limited inquiry into IRS "good faith" even if the summonses were issued before a criminal recommendation. In making such an inquiry a court is required, however, to look at the "institutional" posture of the IRS rather than that of an individual agent, *LaSalle,* 437 U.S. at 316, 98 S.Ct. at 2367. In this respect appellants argue that by

letting the civil statute of limitations run as to liability for false filing of Forms 941 for the quarters ending in calendar year 1976, the IRS had abandoned its civil purpose. A memorandum dated April 11, 1980, from group managers of the IRS Examination Group and Criminal Investigation Division to their respective Chiefs pointed out that these returns were "presently the subject of a joint criminal investigation," that "a decision must be made to either let the statute expire or assess the tax," and that the case had been "developed to the point where the Criminal Investigation Division is of the strong opinion that there appears to be a viable fraud case" which would be jeopardized by the assessment of the tax for 1976. Nevertheless, a search warrant dated April 28, 1980, demanded 1976 materials. Appellants argue this clearly demonstrated that the Service was collecting further information for use in the criminal case.

■ But at the time of the April 11, 1980, memorandum, which was, after all, only a recommendation, the decision to prosecute appellants had only gone to the District Director; the Regional Counsel's office had not approved the bringing of criminal charges, as required by 26 C.F.R. § 601.107 (1985). At any time the Service could have forgone the criminal action and sought civil penalties. The April 11, 1980, memorandum itself noted that recourse might be had to employees and that the big liability was for later years so that not much would be lost by forgoing the civil claim for 1976. Appellants bore the burden of showing *no* valid civil purpose. *See LaSalle,* 437 U.S. at 316, 98 S.Ct. at 2367; *United States v. First National State Bank,* 616 F.2d 668, 672 (3d Cir.), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980). The district court's determination that they failed to meet that burden is not clearly erroneous. Nor does the obtaining and execution of search warrants cause the investigation to become solely criminal or demonstrate bad faith by the IRS. *United States v. First National Bank,* 628 F.2d 871, 874 (5th Cir.1980); *United States v. Zack,* 521 F.2d 1366, 1369 (9th Cir.1975).

■ Appellants contend that under 26 U.S.C. § 7609 (1982), they should have been given notice when their bank was sum-

monsed to disclose whether any of appellants had accounts with the bank and, if so, what kind. The statute requires notice for any "production ... of records" by third-party recordkeepers, 26 U.S.C. § 7609(a)(1)(B), but does not require it if the summons only asks whether records have been made or kept. 26 U.S.C. § 7609(a)(4)(B). This case does not seem to fall clearly into either subparagraph (1)(B) or (4)(B), but legislative history suggests (though not, perhaps, with pristine clarity) that this summons is included in the § 7609(a)(4)(B) exception:

> However, this procedure [the requirement of notice] will not apply in the case of a summons used solely for purposes of collection. Also, this procedure would not apply in cases where the only information requested by the Service was whether or not the third-party record keeper had records with respect to a particular person (without requesting any information contained in those records).
>
> Thus, where the Service has made an assessment or obtaining [sic] a judgment against a taxpayer and serves a summons on a bank, for example, in order to determine whether the taxpayer has an account in that bank, and whether the assets in that account are sufficient to cover the tax liability which has been assessed, the Service is not required, under the committee amendment, to give notice to the taxpayer whose account is involved.

S.Rep. No. 938, 94th Cong., 2d Sess. 371, *reprinted in* 1976 U.S.Code Cong. & Ad. News 3439, 3800-01.

■ Appellants claim that a 1979 payroll book was improperly examined during the execution of a search warrant. Their claim that it could not properly be examined under the plain view doctrine, *Coolidge v. New Hampshire*, 403 U.S. 443, 464–73, 91 S.Ct. 2022, 2037–42, 29 L.Ed.2d 564 (1971), because the IRS already expected to find it is not persuasive. The book was not seized. The IRS agent conducting the search testified she looked at it briefly to see if it fell within the warrant, and replaced it. The district court credited that testimony, and in general was impressed with the agents' conduct. Appellants argue that this perusal led to the summons of the document later, thereby tainting that summons, making it, they claim, "the fruit of the earlier illegal search." Brief for Appellants at 59. However, appellants concede the agents knew that the document existed before summoning it. It is hard to see what right was invaded when the agent looked at the book.

■ Roderick MacKenzie claims that the evidence is insufficient to convict him of willful wrongdoing in filing the last quarterly Form 941. MacKenzie alleged he followed the advice of his lawyer, who told him to do exactly what he had been doing. While this may be a defense, *Bursten v. United States*, 395 F.2d 976, 981 (5th Cir. 1968), apparently the jury here either did not believe that MacKenzie was given this advice or found that he made misrepresentations to his lawyer or failed to make disclosures when he obtained the advice and was therefore not entitled to rely on it. In either case there is no reason to overturn that assessment.

■ Both the individual appellants challenge the sufficiency of evidence to show they issued false W–2 forms to three workers to aid them in filing their own false tax returns. While appellants had nothing to do with the preparation of the tax returns of the employees in question, they knew the returns would be fraudulently filed and relied on that fact to conceal their ongoing fraud. In the cases the Government cites for non-preparer liability, the defendants played more active roles, *e.g., United States v. Wolfson*, 573 F.2d 216, 218 (5th Cir.1978) (defendant, a marine surveyor, solicited charitable donations of yachts and appraised them over their value); *United States v. Haimowitz*, 404 F.2d 38, 39–40 (2d Cir.1968) (defendant had others cash in his race track winnings and told them to tell the IRS that they were compulsive gamblers); *United States v. Maius*, 378 F.2d 716, 718 (6th Cir.) (defendant was bookkeeper and did banking business for corporation), *cert. denied*, 389 U.S. 905, 88 S.Ct. 216, 19 L.Ed.2d 219 (1967), but were similar in that the defendants profited by enabling another to file fraudulent returns. On balance, we believe the aid and assist convictions must stand.

Judgment affirmed.

## ORDER ON PETITION FOR REHEARING

On November 20, 1985, this court issued an opinion affirming the convictions of all the petitioners for conspiracy and of the individual petitioners, one for false filing of tax returns and both for aiding and assisting the filing of false returns. Petitioners seek a rehearing of their appeal. We deny the petition; however, it raises some serious issues we think it appropriate to clarify.

■ Petitioners assert, inter alia, that the court relied improperly on S.Rep. No. 1263, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 6761, in rejecting their claim that section 530 of the Revenue Act of 1978 barred their prosecution or at least entitled them to a jury instruction that if they had a reasonable basis for believing that their conduct was within the law, they should be acquitted. Petitioners object to reliance on the Senate report because that report referred to a version of the statute not ultimately enacted, which required a taxpayer taking advantage of section 530 to act in "good faith." But section 530 as ultimately enacted refers to "reasonable basis" rather than "good faith"; this represents, they argue, a completely different standard that precludes consideration of the taxpayer's subjective state of mind. Using the "good faith" language that appears in the Senate report to require that the taxpayer act in good faith would, they argue, fundamentally change the intent of the statute.

We have considered and reject petitioner's contention that reliance on the Senate report was improper. We hold the Government's arguments on this issue persuasive. The Government points out, first, that the intention of the two houses of Congress in passing the bill was the same. *Compare* H.R.Rep. No. 1748, 95th Cong., 2d Sess 3–4 (1978), *with* S.Rep. No. 1263 at 209–10, 1978 U.S.Code Cong. & Ad.News at 6972–

73 (substantially identical language describing purposes of statute).

Second, the conference committee report on the statute, H.R.Conf.Rep. No. 1800, 95th Cong., 2d Sess. 271, *reprinted in* 1978 U.S.Code Cong. & Ad. News 7198, 7266, states that the conference agreement was "substantially the same as the Senate amendment. However, for technical reasons, the agreement generally follows the text of H.R. 14159 ...." Had the removal of the "good faith" language made a significant change in the statute, as petitioners contend, it seems unlikely that the conference committee would refer to the changed bill as "substantially the same" or deem the change "technical." And, while one court has refused to rely on the Senate report, *see, Ridgewell's, Inc. v. United States*, 228 Ct.Cl. 393, 655 F.2d 1098, 1104 (1981), it did so in an instance where the Senate's version of the statute differed from the enacted one meaningfully (if "technically") by requiring filing of returns (Forms 1099) in years where the statute as enacted did not.

■ Petitioners correctly assert that under section 530(a)(1)(B), their failure to file Forms 1099 before December 31, 1978, did not bar them from taking advantage of section 530, and they are right that the failure to file Forms 1099 did not breach the "consistency" requirement of the statute, notwithstanding the suggestion to the contrary made in our opinion. However, it was appropriate for the court to consider the failure to file Forms 1099 as belying petitioners' assertions that they reasonably believed the employees in question to be independent contractors.

Petition denied.