**UNITED STATES of America, Appellee,**

v.

**John T. MILLER, Appellant.**

No. 79–5214.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 3, 1981.

Decided Sept. 1, 1981.

**236**

James H. Moss, Beaufort, S. C. (Moss, Bailey, Dore & Jessee, Beaufort, S. C., on brief), for appellant.

Wm. Howell Morrison, Asst. U. S. Atty., Charleston, S. C. (Thomas E. Lydon, Jr., U. S. Atty., Lionel S. Loften, Asst. U. S. Atty., Charleston, S. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and BUTZNER and MURNAGHAN, Circuit Judges.

BUTZNER, Circuit Judge:

John T. Miller appeals his conviction for making a fraudulent representation to an agency of the United States in violation of 18 U.S.C. § 1001.[1] Because we find merit in his contention that the district court erred in failing to charge the jury specifically on the defense of reliance on expert advice, we reverse and remand for a new trial.

**I**

Miller was indicted for falsely representing to the South Carolina Employment Se-curity Commission that his annual "family income was $4,500 when ... [it] was approximately $24,000." In support of these charges, the government introduced evidence that Miller had been told by a Commission counselor that his family income was too high for him to qualify for a CETA job. Later, he sought a Housing Authority position, which was classified as CETA work open only to persons with low incomes. Miller certified on his application that his family income was $4,500. This was the amount of his pension for military service. In addition, however, he received a stipend as an elected member of a school board and his wife earned money as a teacher. Their combined income was approximately $22,000.

The official at the employment agency who interviewed Miller and filled out his application testified that he had no recollection of the interview. He added, however, that as a matter of routine procedure, he had never advised anyone to exclude any part of his household's income.

Miller denied that he had intended to defraud the government. His primary defense was his reliance on the advice of the agency official. He testified that he explained to this official exactly what his military pension was, how much he received for his services on the county school board, and the amount of his wife's salary. The official then checked with his supervisor and told Miller that the school board's payments and his wife's salary did not count. The official completed the application, listing only the $4,500 pension, and Miller signed it.

Over Miller's timely objection, the district court refused to give the jury the following charge, which Miller's counsel tendered and the prosecution opposed: "It is a defense that defendant signed the forms in reliance on expert advice. The reliance defense to be effective must establish good faith re-

---

1. The jury acquitted Miller of fraudulently obtaining his salary as an CETA employee in violation of 18 U.S.C. § 665(a).

liance on an expert coupled with full disclosure to that expert."[2]

## II

█ The reliance defense, urged most frequently in tax evasion cases, is designed to refute the government's proof that the defendant intended to commit the offense. *See United States v. Smith*, 523 F.2d 771, 778 (5th Cir. 1975). The essential elements of the defense are (a) full disclosure of all pertinent facts to an expert, and (b) good faith reliance on the expert's advice. *See United States v. Cox*, 348 F.2d 294, 296 (6th Cir. 1965).

█ The government does not contend that Miller's tendered instruction on the reliance defense was inappropriate, but it argues that the court's charge adequately instructed the jury. As the government points out, the court carefully instructed the jury on every element of the offense including the necessity of proof that Miller acted willfully with intent to defraud. Moreover, the court admonished the jury that the purpose of requiring proof that a defendant acted willfully and knowingly is to insure that "no defendant will be convicted for an act done by him because of mistake or accident or any other innocent reason." The court emphasized: "We do not want a person convicted for any innocent acts done by him. He has to act knowingly, intentionally and willfully." Several times the court reiterated that the prosecution was required to prove that Miller had the specific intent to deceive or defraud the government.

Although the district court conscientiously strove to instruct the jury fairly and fully, we are not persuaded that the charge when read in its entirety explained Miller's defense adequately. Instructing a jury that the government must prove that a defendant intended to commit an offense is quite different from explaining to the jury how the defendant can legitimately counter the government's proof of this essential element of the crime. Our precedent on this point establishes that a district court's charge to the jury must be "sufficiently precise to instruct the jury in the defendant's theory of defense." *United States v. Mitchell*, 495 F.2d 285, 288 (4th Cir. 1977). There we reversed a judgment of conviction for tax evasion because the district court did not give a precise and specific charge on the reliance defense. Oblique references to the defense, we held, were insufficient. Other authorities hold that despite a general instruction on intent, it is reversible error not to give a specific instruction on the reliance defense when a proper foundation has been laid. *See Bursten v. United States*. 395 F.2d 976, 981–82 (5th Cir. 1968).

Quite apart from the sound precedent that dictates reversal, an untoward incident of trial supports Miller's assignment of error. After the jury had deliberated for some hours, they requested clarification of the law applicable to the case. Repeating portions of its charge, the court properly told the jury that it had ruled that representing one's income to be $4,500 when in fact it was far in excess of that amount, "is, as a matter of law, a material representation." Then the court, departing from its earlier text, added, "Now that's all I'm ruling, that such a representation if made knowingly, willfully and intentionally is a material representation."

█ This inadvertent lapse might have caused the jury to believe that the court had ruled that the critical representation was material as a matter of law because the court believed it was made knowingly, willfully, and intentionally. Taken in the context of the entire charge, the supplemental charge might not be ground for reversal. At the very least, however, it demonstrates that the government's argument concerning the adequacy and accuracy of the court's charge is not altogether well founded. It also shows that this case does not present

**2.** Defense counsel's memorandum to the judge cited the following pertinent cases in support of his request: *United States v. Smith*, 523 F.2d 771, 778 (5th Cir. 1975); *Bursten v. United States*, 395 F.2d 976 (5th Cir. 1968); *United States v. Cox*, 348 F.2d 294 (6th Cir. 1965); *United States v. Baldwin*, 307 F.2d 577 (7th Cir. 1962).

an exception to the general rule that a defendant is entitled to an instruction explaining the defense of reliance on expert advice when a proper factual foundation has been laid.

We find no merit in the other assignments of error. The judgment is vacated, and this case is remanded for a new trial.

ALBERT V. BRYAN, Senior Circuit Judge, dissenting:

As the majority pithily puts it, the sole point of reversal is the District Court's refusal to grant this instruction to the jury:

It is a defense that defendant signed the forms in reliance on expert advice. The reliance defense, to be effective, must establish good faith reliance on an expert coupled with full disclosure to that expert.

I agree that the proferred instruction is a correct statement of law in the abstract. However, I cannot agree that its invocation here *in haec verba* was indispensable or even imperative to a fair trial. The reason is that its teaching was in fact fully and repeatedly given to the jury, in instructions well embracing and preserving appellant's claim of reliance.

In ascribing deficiency to the District Judge's charge as not embodying appellant's right of "reliance," the majority cite as precedent this court's rejection of the instructions relating to the subject in *United States v. Mitchell*, 495 F.2d 285 (C.A.4 1977). But there the court's layout to the jury of the defense differed significantly from the manner of submission adopted presently. In *Mitchell* only scattered and sparse references were made to the critical factors of defense. We concluded that "both from the separation [by other remarks] and their inherent ambiguity, . . . defendant did not receive the precise and specific charge to which he was entitled.[1]

However, the instructions as given instantly did not suffer from either of the infirmities stressed in *Mitchell*. Certainly, they did not lose force or coherence through separateness or ambiguity. The judge's directives upon the question of defendant's specific intent to defraud the Government were phrased with inescapable clarity. In speaking to the jury on the necessity of proof of appellant's fraudulent intent, his words were not perfunctory. Rather, they were a thorough and emphatic insistence that appellant should not be convicted for anything he had done through misunderstanding or unknowingly.[2] The jurors deliberated under a simple and readily digestible explanation of the law.

Incidentally, I am unable to grasp how the statements by the trial judge, made after granting the jury's request for further instructions, can be said, as do the majority, to have confused the issue. A reading of the whole of it at once manifests that the court was again only impressing the issue upon the jury:

A representation that one's family income for the preceding twelve months is forty-five hundred dollars when in fact the family income was far in excess of that amount is, as a matter of law, a material representation. . . . Now, that's all I'm ruling, that such a representation if made knowingly, wilfully and intentionally is a material representation. It is for you to determine whether when the

---

1. *Id.* at 288. In the other case cited in the majority opinion, *Bursten v. United States*, 395 F.2d 976 (C.A.5 1968), the trial judge refused the requested instruction because he had found that the expert was not qualified to advise the defendant; it was not because he believed that he had adequately presented the issue to the jury. *See id.* at 981–82.

2. *E. g.*: "Now, ladies and gentlemen, the acts charged against the defendant in both of the counts of this indictment were *allegedly* done by the defendant wilfully and knowingly. . . .

An act is done knowingly if done voluntarily and intentionally and *not because of mistake or accident or any other innocent reason.* The purpose of requiring that a defendant, proof that a defendant acted wilfully and knowingly is *to insure that no defendant will be convicted for an act done by him because of mistake or accident or any other innocent reason.* We do not want a person convicted for any innocent acts done by him. He has to act knowingly, intentionally and wilfully." Record, vol. 2, at 326 (accent added).

defendant made or caused to be made such a representation. First you have got to determine whether he did it. Secondly—or caused it to be done— secondly, you have got to determine the circumstances under which it was done. Did he knowingly and intentionally and wilfully make the statement with the intent to defraud or cause the statement to be made and filed with the Employment Security Commission, the South Carolina Employment Security Commission, with intent to defraud.

Record, vol. 2, at 356.

The charge of the District Court strikingly ensured his acquittal if appellant had acted through mistake. Simply said, he did not "tell the *whole* truth" when he last applied for the CETA employment. His criminal conduct was aptly summed by the District Judge in sentencing:

> Well, you know, one of the things that impressed me in the trial was that there was evidence that you went to the CETA office sometime before you actually got this job and at that time you were interviewed and you told them what your family income was and they told you then that you were not eligible because of your family income for the CETA program. Then later you indicated you had gone back again to the same office and you tell them your family income is forty-five hundred dollars and you meet the guidelines and you get your job.
>
> . . . .
>
> That is very strong evidence that you knowingly, willfully, and intentionally went in and misrepresented your family income, because you had been in and denied a CETA job in that same office by being told there that your family income was too high, and then later you go back and tell them it is forty-five hundred dollars, which was within the guidelines that you could get the job.

Transcript of sentencing proceedings at 19–20.

I would affirm the conviction.