803 F.2d 714
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Appellee,
v.
Amanda REID, Appellant.
 No. 85-5550.
 United States Court of Appeals, Fourth Circuit.
 Argued July 15, 1986.
Decided Oct. 8, 1986.
 
 Kathleen M. Paolo, for appellant.
 Kenneth W. McAllister, United States Attorney (Becky M. Strickland, CLA Paralegal Specialist on brief), for appellee.
 M.D.N.C.
 AFFIRMED.
 Before PHILLIPS, SPROUSE and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant Amanda Reid appeals her conviction for making a false statement to a federal firearms dealer in connection with the acquisition of a firearm, in violation of 18 U.S.C. Sec. 922(a)(6). Reid contends that the lower court's jury instructions constituted plain error, that the court erred by failing to dismiss the prosecution as the fruit of an unlawful search and seizure, that alleged governmental misconduct denied defendant a fair and impartial trial, that the lower court erred in refusing to allow Reid to present evidence that the case against her was a "demogogic prosecution manufactured by governmental misconduct," that 18 U.S.C. Sec. 922(a)(6) is unconstitutional as applied to Reid, and that the trial court committed various errors which denied her a fair and impartial trial. We reject all of these contentions and affirm Reid's conviction.
 
 
 2
 * Reid, an attorney licensed to practice law in California and New York, is a partner in the California law firm of Decious, Reid & Associates, and she is of counsel to the New York City law firm of Daniel P. Foster, P.C. Reid and her parents visited Reid's aunt, Margaret Waugh, at Waugh's home in North Wilkesboro, North Carolina, in May 1981, for a family vacation. Reid testified that at the time of her visit, she was considering moving to North Carolina and taking the North Carolina bar exam. Except for this brief family visit, Reid had never lived or visited her aunt at this North Wilkesboro, North Carolina, address.
 
 
 3
 On May 7, 1981, Reid purchased a handgun from McHargue Guns and Coins, Inc., a federally licensed firearms dealer located in Winston-Salem, North Carolina. Applicable federal law requires that when purchasing a firearm from a licensed dealer, the purchaser must answer, on ATF Form 4473, a number of questions, including place of residence. The law prohibits firearms dealers from selling guns to out-of-state residents. The seller is required to verify on the form that he saw identification from the purchaser. A North Carolina driver's license is normally used as the buyer's identification.
 
 
 4
 Phillip Parker, a McHargue Guns and Coins, Inc. sales clerk, testified that when he sold the handgun to Reid in May 1981, she filled out the required portion of the ATF Form and listed her address as "Box 96, North Wilkesboro, North Carolina 28659." Parker, who knew of the in-state residency requirement for the purchase of a firearm, saw as Reid's identification a pistol permit and an expired international student identification card.
 
 
 5
 The pistol permit is required under North Carolina law for the purchase of handguns. The Sheriff of the County in which the purchaser resides issues this permit. About two days before purchasing the gun, Reid had gone with her aunt to the Sheriff's Department in North Wilkesboro. Reid explained that she wanted to purchase a gun, and that she was living with her aunt on Bushy Mountain Road in North Wilkesboro. When asked for North Carolina identification, Reid responded that she did not have any because she had not been in the state long enough but that she was thinking of taking the bar exam and staying in North Carolina "at that point in time." The Sheriff's Department issued Reid the gun permit.
 
 
 6
 Shortly after purchasing the gun, Reid returned to New York. In June 1981, she applied for admission to the New York bar. In response to a question on the application asking for "present address, full mailing address," Reid listed a Brooklyn, New York address. She also answered that she had been at this address since October of 1978. Reid did not list the North Wilkesboro, North Carolina, address in response to a question asking for a list of "every permanent and temporary residence you have ever had, including the present ... since first entering college...."
 
 
 7
 In February of 1984, based upon search warrants executed by the FBI, searches, in matters unrelated to the present case, were conducted simultaneously at various locations in the Eastern District of New York, including a branch office of the Foster firm at Apt. 1A, 1107 Carroll St., Brooklyn, New York, and one location in the Southern District, the main law office of the Foster firm located at 145 West 55th Street, Manhattan, New York. At one of these locations, Reid's copy of the ATF Form 4473 used to purchase the handgun in North Carolina was found and seized. The searches at all locations were based upon the same 40-page affidavit. The search warrants were issued by Judge Bramwell in the Eastern District of New York and Magistrate Gershon in the Southern District of New York based on probable cause found in this affidavit.
 
 
 8
 The day before the searches, however, on February 16, 1984, Kit Decious and Daniel Foster, members of the two law firms with which Reid was associated, appeared before Judge Nickerson of the Eastern District of New York in connection with a grand jury investigation. Two grand jury subpoenas duces tecum were issued to Decious and Foster ordering them to return the next day with the same records and property later seized under the affidavit and search warrants. Decious and Foster then told Judge Nickerson that they had no such records.[1]
 
 
 9
 Pursuant to the warrants, agents seized a half million documents, most of which came from the Eastern District of New York locations. Only one box of documents was seized from the sole Southern District of New York location, 145 West 55th St., Manhattan.
 
 
 10
 Both the Southern District of New York and the Eastern District of New York district courts then confronted the issue of the lawfulness of the search and seizure. On April 23, 1984, Judge Lasker of the Southern District of New York, denied a Rule 41(e) motion demanding return of the seized Southern District of New York materials on the basis that the movant, the Daniel Foster law firm, was unable to demonstrate any irreparable harm occasioned by the failure to return the seized documents.[2] Accordingly, Judge Lasker denied the motion on the condition that the law firm be given access to the seized Southern District of New York documents.
 
 
 11
 On Nov. 16, 1984, the Southern District of New York Court, Judge Lasker again presiding, was again confronted with a Rule 41(e) motion by the Foster firm relating solely to the seizure of the Southern District of New York materials. Judge Lasker determined at this hearing that:
 
 
 12
 I am prepared to rule with regard to the Southern District documents then that on representation of the government that the documents have been returned which are not in dispute, that copies which have not been made of them and are not being used, at least in the Eastern District of New York, for law enforcement purposes and so far as the United States Attorney, Mr. Gallagher, knows for law enforcement purposes anywhere, that the plaintiffs have been granted full relief; that except for the possibility that in spite of Mr. Gallagher's good faith representations he may be incorrect, I state for the record that my denial of further relief is explicitly conditioned on the proposition that the plaintiffs not be deemed to have waived any right which it otherwise would have under Rule 41(b) or any other right to move to suppress the use of any of the documents or copies of documents unless they are hereafter legally and properly seized for law enforcement purposes. All right.
 
 
 13
 Judge Nickerson of the Eastern District of New York also ruled on the law firm's Rule 41(e) motion dealing with the return of the seized Eastern District of New York materials. The Eastern District of New York court declined on June 7, 1985, to grant the motion on the basis that the law firm would suffer no irreparable harm, because the government had volunteered to return all the seized Eastern District of New York documents. The only possible harm resulting from the refusal to exercise jurisdiction which the court envisioned was the movants' inability to obtain a ruling at that time on the issue of the lawfulness of the search and seizure. The court asserted, however, that the policy of Rules 41(e) and (f) "expressly favors that motions to suppress evidence be made in the trial court, so that all pretrial motions can be disposed of in a single court appearance."
 
 
 14
 Based upon her representations of residency made in the seized ATF Form 4473, Reid was indicted in the Middle District of North Carolina in February 1985 for violation of 18 U.S.C. Sec. 922(a)(6) and Sec. 924. She pled not guilty and made a number of pretrial motions including a Motion for Suppression of Treasury Form No. 4473 and a Motion to Dismiss Indictment. At a June 1985, suppression hearing, Chief Judge Ward of the Middle District of North Carolina considered whether, as Reid claimed, material misrepresentations in the affidavit destroyed probable cause for the search warrant, and whether he could rule invalid a search warrant signed by another federal district judge.
 
 
 15
 Based upon the evidence, Judge Ward found that Reid's gun receipt was seized in the Eastern District of New York and that therefore, the ruling of the court in the Southern District of New York was not involved.
 
 
 16
 Considering, then, only the validity of the warrants issued in the Eastern District of New York, he upheld their validity and denied the suppression motion.
 
 
 17
 Following the grant of three successive motions by Reid for continuances, Reid's jury trial began in July 1985 before Judge Erwin of the Middle District of North Carolina. Reid testified that when she listed the North Wilkesboro address as her residence on the ATF form, she considered that address to be a truthful statement of her residence at that time. Reid admitted that the only time, until the date of her indictment in February 1985, that she had been at the North Wilkesboro address was the May 1981 trip with her family. Yet, she still considered that to be her residence, as she "could go there at any time, I could go live with my aunt at any time, I am welcome there at any time, her home is my home." At the New York bond hearing in connection with this case, Reid had listed the North Wilkesboro address as her residence, as this matter "had to do with North Carolina"
 
 
 18
 Reid was found guilty as charged and was sentenced to five years probation and ordered to pay a $2,500 fine and to return the gun. This appeal followed.
 
 
 19
 * We consider first Reid's contention that the trial court's jury instructions contained plain error requiring reversal despite her conceded failure to object contemporaneously to the instructions as given.
 
 
 20
 The challenges go to a number of alleged errors, but only the principal one warrants any discussion. This is the claim that the court failed adequately to define the mental state required to find the defendant guilty of an 18 U.S.C. Sec. 922(a)(6) violation and, more specifically, that the instructions given failed to explain to the jury her specific theory of defense--that if she honestly believed herself to be a North Carolina resident when she filled out the form, she could not be found guilty.
 
 
 21
 We disagree with this contention.
 
 
 22
 18 U.S.C. Sec. 922(a)(6) provides that it shall be unlawful for any person in connection with the acquisition or attempted acquisition of any firearm ... from a licensed ... dealer, ... knowingly to make any false or fictitious oral or written statement ... intended or likely to deceive such ... dealer ... with respect to any fact material to the lawfulness of the sale or other disposition of such firearm ... under the provisions of [the applicable statutes of the United States].
 
 
 23
 Reid's contention is that the instructions given failed to relate her specific defense of a subjectively honest belief that the North Wilkesboro address was her residence to the statute's requirement that the "false statement" be "knowingly" made and be "intended" to deceive the dealer. Because this went to the critical specific intent requirement of the statute, she says, this error was "plain," requiring reversal.
 
 
 24
 There is no merit to this contention, particularly when assessed under the stringent plain error test, see United States v. McCaskill, 676 F.2d 995, 1002 (4th Cir.1982).
 
 
 25
 The district judge first read to the jury the indictment which of course tracked the statutory language, including the specific intent element as embodied in the critical "false," "knowingly," and "intended to deceive" language. He then reiterated this requirement in the course of describing the several elements which the jury must find to convict. Most critically, in elaborating later on the meaning of the key word "knowingly" in the context used, the court explained: "The word 'knowingly' as used in the phrase 'knowingly made a false statement' means that [sic] voluntarily and intentionally, and not because of mistake or accident." This directly followed the court's careful explanation that a person "may be a resident of one or more states."
 
 
 26
 These direct explications of the meaning of the critical terms defining the requisite mental state for conviction were capped by the court's emphasizing that this statute requires proof of "specific intent," here that "the defendant knowingly did an act which the law forbids, purposely intending to violate the law," and a full explanation of the government's burden to prove all the statutory elements, including that of specific intent as so defined, beyond a reasonable doubt.
 
 
 27
 In the face of these specific and clear instructions on specific intent, as defined in the statute, Reid's real complaint is that the court did not go beyond and more directly relate her theory of "honest belief, even if technically mistaken," to the legal definition of "knowingly," which the court had given. But while the failure specifically to instruct on an evidentiarily-supported theory of defense may sometimes constitute reversible error, see, e.g., United States v. West, 666 F.2d 16, 20 (2d Cir.1981), this does not of course mean that a court must give the exact or even approximate text of proffered instructions on such a theory by the defendant. The rule instead is simply that a theory of defense supported by evidence is adequately submitted to the jury when the instructions actually given subsume the theory in language sufficiently precise to allow its application by the jury to the facts in evidence and the controlling legal principles. See United States v. Miller, 658 F.2d 235, 237 (4th Cir.1981).
 
 
 28
 Under that test, Reid's specific theory of defense--"honest belief, even if mistaken"--was fully contemplated by the court's instructions above excerpted. Most tellingly, the court specifically noted that one cannot be found "knowingly" to have done an act when it is done "because of mistake or accident" (emphasis added). One practical test of the adequacy of instructions to lay a particular theory of defense before a jury is whether the instructions fairly support and make obviously relevant jury argument that seeks acceptance of the specific theory. That test is clearly met here. It is inconceivable that this jury was not fully aware that under the law as instructed by the court, they could not convict Reid if, in line with her defense, they entertained any reasonable doubt as to whether she acted under an honest, if mistaken, belief in this North Carolina residency.
 
 
 29
 Reid seeks further specific support for her challenge to the jury instructions in this court's opinion in United States v. Behenna, 552 F.2d 573 (4th Cir.1977). Aside from the fact that the instructions in Behenna had been objected to and were therefore not reviewed under the stringent plain error standard, the case is readily distinguished.
 
 
 30
 In Behenna the specific vice found was the ambiguity of the instructions on specific intent as related to the defendant's evidence. Attempting to avoid a finding that he had falsely and "knowingly" misrepresented as his South Carolina "residence" a vacant lot, the defendant testified that he had intended at the time to make it his "residence" in the future. The court's instructions, erroneously in this court's view, misled the jury into concentrating unduly upon whether that was the defendant's specific intent as to his future residency rather than upon whether he had knowingly misrepresented his then present residence.
 
 
 31
 Behenna simply does not stand for the proposition that a specific instruction on specific theories of defense related to the requisite state of mind under Sec. 922(a)(6) is routinely required. The decision was a highly fact-specific one focussed upon ambiguity of particular instructions in relation to particular evidence; and it does not support Reid's challenge here.
 
 
 32
 We therefore conclude that there was not error, certainly not plain error, in the court's instructions on the specific intent required to convict here, nor in any other respect challenged.
 
 III
 
 33
 We turn next to Reid's claim that the trial court erred by failing to dismiss the prosecution as the fruit of an unlawful search and seizure. She challenges the results of the suppression hearing in the Middle District of North Carolina on a number of bases. Reid first contends that the lower court erred in finding that her gun receipt was seized in the Eastern District of New York. She argues that the receipt was, in fact, seized in the Southern District of New York and, therefore, Judge Lasker's November 16, 1984, ruling dealing with the Southern District of New York seizure, which, Reid claims, found the search and seizure to be unlawful, is applicable. She contends that the lower court here erred by failing to follow the Southern District of New York court's ruling in accordance with DiBella v. United States, 369 U.S. 121 (1962). See also United States v. Lester, 21 F.R.D. 30 (S.D.N.Y.1957).
 
 
 34
 We disagree and affirm the lower court's ruling on this issue. Judge Ward's finding that the Reid gun receipt was seized in the Eastern District of New York is subject to clearly erroneous review. Judge Ward took extensive evidence on this issue. Reid testified before the lower court that the receipt was stashed in a lower drawer of a file cabinet at 145 West 55th St. where she kept her personal effects, that she had last seen it there in December 1983, and that no one moved any of those materials from that location. Neil Herman, an FBI agent, was the case agent, custodian who took the final inventory of all documents seized during the searches. His testimony established that the items from the various search locations were never commingled. Herman could not produce the inventory from which the sales receipt was found, but he asserted that to his personal knowledge the document was recovered at the 1107 Carroll St., Brooklyn, address in the Eastern District of New York as part of a set of documents in a folder identified in writing by Reid. He also testified that the detailed inventory of the Southern District of New York materials made no reference whatsoever to Amanda Reid, to any of her documents, or to her gun receipt. We conclude that substantial evidence supports the Middle District of North Carolina's finding that the seizure occurred in the Eastern District of New York, and that this finding is not clearly erroneous.
 
 
 35
 Because we affirm the district court's finding that Reid's property was seized in the Eastern District of New York, we need not consider the effect of any search and seizure rulings in the Southern District of New York. We consider only the propriety of Judge Ward's rulings as they might be affected by rulings in the Eastern District of New York.
 
 
 36
 Reid next contends that "the trial court erred by refusing to consider the illegality of the New York 'warrants' on their face, the lack of probable cause for issuance of the 'warrants' and the illegality of the seizures as grounds for suppression of the evidence seized." This challenge relates to both of the issues addressed by Judge Ward at the suppression hearing: (1) whether alleged material misrepresentations in the affidavit destroyed probable cause, and (2) whether he could rule invalid a search warrant signed by another federal district judge, here a judge of the Eastern District of New York.
 
 
 37
 Judge Ward correctly took the position that unless defendant met the test set out in Franks v. Delaware, 438 U.S. 154 (1978), he had no authority in any event to rule invalid a warrant signed by another federal district judge. Under Franks, Reid had to make a substantial preliminary showing that the statements made to the judge issuing the warrants, Judge Bramwell of the Eastern District of New York, were false, thus making the warrants lacking in probable cause. Judge Ward, therefore, asked for an offer of proof from Reid which would tend to establish the falsity of the statements in the affidavit upon which Judge Bramwell relied in issuing the warrants. After hearing Reid's offer of proof, Judge Ward concluded that those alleged misrepresentations affected only two paragraphs in the affidavit. Even eliminating these two contested paragraphs, the court ruled, there were still adequate grounds for issuance of the search warrant so that Reid had failed to make a prima facie showing of falsity under Franks.
 
 
 38
 We find no error in Judge Ward's conclusion that a substantial basis supported the Eastern District of New York Court's finding of probable cause for the issuance of the warrants. We therefore affirm his order refusing suppression.
 
 
 39
 Finally, Reid challenges the lower court's refusal to rehear the motion to suppress or to extend the date of trial to permit the questions regarding the alleged unlawfulness of the search and seizure to be fully resolved in the district of seizure before trial. We reject Reid's contention.
 
 
 40
 Reid's motions for rehearing and reargument were based upon an intervening June 26, 1985 ruling by Judge Nickerson in the Eastern District of New York. Reid contended that in this order Judge Nickerson had ordered the return of the seized materials under Rule 41(e) and that this should be treated as an order of suppression under Rule 12, binding in her North Carolina prosecution and therefore precluding introduction of seized items in her trial.
 
 
 41
 Contrary to Reid's assertion, however, Judge Nickerson's June 26 ruling did not alter his earlier June 7, 1985 order. In that earlier ruling, the court had declined to exercise jurisdiction on the basis that the Foster law firm could not establish irreparable harm, as the government had volunteered to return the documents. At the June 26, 1985, hearing, Judge Nickerson merely inquired whether the documents had been returned, permitted the movants to pick up the documents at their convenience, and denied the law firm's motion to stay any further requirements that the firm turn over materials to a New York county grand jury investigation.
 
 
 42
 Accordingly, because the Eastern District of New York Court's later ruling did not amend any previous order and certainly did not rule that the documents should be suppressed, the Middle District of North Carolina court did not err in refusing Reid's motions for rehearing and for reargument.
 
 IV
 
 43
 Reid contends that in various ways prosecutorial misconduct denied her a fair and impartial trial. She cites six such incidents of alleged misconduct: (1) failure to produce Brady materials; (2) government misrepresentations to the courts in the Second and Fourth Circuits to avoid adverse rulings which would have precluded Reid's prosecution; (3) improper government conduct in moving to unseal the affidavit in support of the New York search warrants and then releasing it to the press; (4) the government's refusal to accede to another continuance after Reid had been subpoenaed to appear before a grand jury in New York; (5) improper introduction of statements by Reid in violation of Rule 16 of the Federal Rules of Criminal Procedure; and (6) improper closing jury arguments by the government by innuendo and speculation as to Reid's bad or improper motive.
 
 
 44
 We have examined these claims of prosecutorial misconduct and have found them all to be without merit.
 
 V
 
 45
 Finally, Reid contends that the court erred in refusing to let her present evidence that the case against her was a "demagogic prosecution manufactured by governmental misconduct"; that 18 U.S.C. Sec. 922(a)(6) is unconstitutional as applied to Reid; and that the district court committed numerous trial errors, including the failure to direct acquittal for insufficiency of evidence, and making "disparaging" remarks and engaging in other conduct that prejudiced her in the eyes of the jury.
 
 
 46
 We have examined all of these assignments of error and find none to have substance.
 
 
 47
 The conclusory contention of "demagogic prosecution" rests essentially on defendant's unsupported perception of an underlying sinister political motive for this prosecution.
 
 
 48
 The claim of unconstitutionality of the statute as applied to Reid is without merit. See Huddleston v. United States, 415 U.S. 814 (1974).
 
 
 49
 The evidence, though obviously conflicting and necessarily circumstantial as to intent, was quite sufficient to support a finding of guilt beyond a reasonable doubt on the critical issue of Reid's specific intent given the fleeting contact she had with the North Carolina "residence" she claimed, and her conflicting statements of residence in other contexts.
 
 
 50
 The charges of trial court conduct prejudicing the jury are frivolous.
 
 
 51
 AFFIRMED.
 
 
 
 [1]
 When Judge Bramwell issued the search warrants he was apparently completely unaware of the Eastern District of New York's grand jury proceeding and he was not then informed about the grand jury subpoenas. Indeed, Judge Bramwell later noted that "If I had known that you were before Judge Nickerson, under those circumstances, I doubt that I would have signed the search warrants."
 
 
 [2]
 Rule 41(e) provides that a person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized