856 F.2d 187
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Emory E. COX, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Max B. WILLARD, Defendant-Appellant.
 Nos. 87-5078, 87-5081.
 United States Court of Appeals, Fourth Circuit.
 ARGUED: June 21, 1988.
DECIDED: Aug. 26, 1988.
 
 Joseph L. Anthony (Gardiner, Moss & Rocovich, P.C., on brief), for appellant.
 Alan Hechtkopf (Gary R. Allen, Robert E. Lindsay, Bruce Morton, Department of Justice; William S. Rose, Assistant Attorney General; John Perry Alderman, United States Attorney, on brief), for appellee.
 Before JAMES DICKSON PHILLIPS and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Emory Cox and Max Willard challenge their convictions on nine and thirteen counts, respectively, of a multi-count indictment charging tax law violations. Count I charged Willard, Cox, and one Raymond Jackson with conspiracy to defraud the United States, in violation of 18 U.S.C. Sec. 371. Counts II-IV charged all three defendants, counts V-VIII charged Cox and Willard, and counts IX-XIII charged Jackson and Willard, with aiding and assisting in the filing of false Forms 941, employment tax returns, in violation of 26 U.S.C. Sec. 7206(2).[1] In a joint jury trial all three defendants were found guilty on all counts, and Cox and Willard appealed, raising numerous assignments of error. We affirm.
 
 
 2
 * Cox and Jackson were majority shareholders of Kennedy Coal Corporation (Kennedy), a Sub-Chapter S corporation which they formed in 1976. Cox continued with Kennedy after Jackson sold his shares in early 1981. During the relevant tax years, 1979-1982, Kennedy paid its workers through a bifurcated procedure. The miners were paid $60 per day as straight wages. This payment was made by check on a bi-weekly basis with the appropriate income and FICA (social security) taxes withheld from the check. These same miners also received a "bonus" payment of $3.00 for every cut of coal over ten cuts mined by their shift on a given day. This same bonus was also given to workers on non-production shifts in the amount earned by the production shift. The total bonus often exceeded $300 per month for a given bi-weekly period. However, if a miner missed any part of an eight hour day during the two-week period, that miner forfeited his or her entire bonus for that period. The evidence of record also reveals that both Cox and Jackson told the miners on numerous occasions that the bonuses were "tax free" or that the tax had been "taken care of."
 
 
 3
 Initially, the bonus payment was made by check, but on approximately October 26, 1979, Kennedy began making the payments in cash. The miners would pick up their cash bonus at the time they collected their regular paychecks. The cash was enclosed in an envelope with nothing but the miner's name written on the outside and sometimes a notation reflecting the amount enclosed written on the inside. Overtime payments were also included in the envelope. Neither social security nor income tax withholdings were ever made by Kennedy with regard to these bonus payments nor, apparently, were withholdings made with regard to the overtime payments. The W-2 forms given to the miners for the relevant period did not include the bonuses and overtime amounts, nor were these amounts reported on Kennedy's Forms 941, the employer's quarterly tax reports to the IRS.[2] Forms 1099, which must be filed for amounts paid to independent contractors in excess of $600 in a calendar year, see 26 U.S.C. Sec. 6041(a) (1982), were not filed until after the IRS began its investigation of Kennedy's tax practices. The miners themselves did not report the income on which withholdings had not been made and several were later assessed penalties in addition to the overdue income taxes on these amounts.
 
 
 4
 Testimony and evidence of record, which the jury was entitled to believe, reveals that Cox, Jackson, and Willard met together during October 1979 and that after this meeting the change to cash bonus payments was initiated and that they informed Barbara Harris of the change. Prior to the change, the bonus checks to the individual miners were signed by either Cox or Jackson and misclassified on Kennedy's books in categories such as mine supplies, or repair and maintenance. After October 1979, the system Kennedy used to disguise the bonuses became even more complex. Checks signed by either Cox or Jackson were drawn on the Grundy National Bank and made payable to the Cumberland Bank, where they were cashed. The cash was then used to make up the bonus payments and the checks were misclassified on the books again as being for supplies, repairs, or maintenance. As the bonus amounts increased, often exceeding $10,000 in a two week period, Cox or Jackson would cash two separate smaller checks in order to avoid IRS reporting requirement on checks cashed in excess of $10,000.
 
 
 5
 Barbara Harris testified that during 1980, Willard showed her how to classify the checks written to generate the bonus payments on the books as "Cumberland Bank Number Two," a note payable account, in order that he might know what the checks were when the account came up. The sole notation "No. 2" was made on several of the check stubs. The evidence also revealed that in preparing the 1980 Kennedy tax returns, Willard reclassified the Cumberland account as supplies.
 
 
 6
 The procedure at RBJ Coal Company (RBJ) was much the same as that at Kennedy. In early 1981, when Jackson sold his shares in Kennedy, he acquired a 60% ownership interest in RBJ. At that time, Gary Blankenbeckler was retained as accountant for the newly activated corporation. Blankenbeckler had also been employed by Kennedy sometime prior to that company's retention of Willard's firm, Michael Graham Associates, in 1980. RBJ followed the same bifurcated wage/cash bonus procedure as had Kennedy with the accompanying nonwithholding, nonreporting, and misclassifications on the records. Blankenbeckler testified that he prepared RBJ's Forms 941 for the second and third quarters of 1981 without including the bonus amounts in the totals. He testified that he had repeatedly told Jackson that this procedure might eventually lead to trouble with the IRS because all the other companies for which he worked that paid cash bonuses did report such amounts on their Forms 941. In October 1981, Blankenbeckler was told to turn the RBJ books over to Willard. He did so and testified that at the time he warned Willard of his misgivings about the bonus procedure. Willard continued to follow the procedure, however, preparing Forms 941 for RBJ for the fourth quarter of 1981 and the first two quarters of 1982 without reporting the amounts paid out in cash bonuses.
 
 
 7
 The foregoing evidence having been adduced during the government's case, the defendants moved for acquittal on the conspiracy and aiding and assisting counts. The court denied this motion as to the conspiracy count against Cox and Jackson and took the motion under advisement as to all of the remaining counts. The defendants then rested without putting on evidence and the jury returned verdicts of guilty as to all three defendants on all counts of the indictment. Following denial of the defendants' post-verdict motions for acquittal or new trial, Cox and Willard took these appeals.
 
 II
 
 8
 Appellants' initial contention is that the district court erred in reserving its ruling on their motion for acquittal on the conspiracy and aiding and assisting counts because the evidence at the close of the government's case was "not sufficient to present a jury question as to [their] guilt," United States v. Godel, 361 F.2d 21, 24 (4th Cir.1966). Where, as here, the only evidence is that embodied in the government's case, this challenge becomes a general challenge to the sufficiency of the evidence to sustain the convictions. Cf. id. (harmless error to reserve ruling on motion for acquittal where evidence at close of government's case is sufficient to sustain conviction). The acquittal motion having been denied as to Cox on the conspiracy count, Cox has separately challenged the sufficiency of the evidence to sustain his conviction on that count. Accordingly, we now assess the sufficiency of the evidence to sustain Cox and Willard's convictions on all counts as charged, considering only whether there is substantial evidence, viewed in the light most favorable to the prosecution, to support the verdict. Glasser v. United States, 315 U.S. 60 (1942); United States v. Samad, 754 F.2d 1091, 1096 (4th Cir.1984) (citing Glasser). Guided by this standard, we find sufficient evidence in the record from which a reasonable jury could find Cox and Willard guilty as charged beyond a reasonable doubt.
 
 
 9
 * Conviction under Sec. 7206(2) requires proof of three elements: (1) that the defendant "aided, assisted, procured, counseled, advised or caused the preparation [or] presentation of a return, (2) that the return was fraudulent or false as to a material matter, and (3) that the act of the [defendant] was willful." United States v. Perez, 565 F.2d 1227, 1233-34 (2d Cir.1977). Counts II-IV of the indictment charged that from January 1980 through April 1981, Cox, Willard, and Jackson did willfully aid and assist in, and procure, counsel and advise the preparation and presentation" to the IRS of Forms 941, which were false or fraudulent as to material matters in that they substantially understated Kennedy's total wages subject to withholding for the third and fourth quarters of 1980 and the first quarter of 1981, respectively, in violation of 26 U.S.C. Sec. 7206(2). Counts V-VIII repeated these charges as to only Cox and Willard for the period from April 1981 through April 1982, involving Kennedy's Forms 941 for the remaining quarters of 1981 and the first quarter of 1982, respectively. Counts IX-XIII repeated these charges as to Jackson and Willard for the period from April 1981 through July 1982, involving RBJ's Forms 941 for the second, third, and fourth quarters of 1981 and the first two quarters of 1982, respectively.
 
 
 10
 Appellants argue that the evidence was insufficient to establish that the Forms 941 in question were false or that they acted willfully. They argue that under Sec. 530 of the Revenue Act of 1978[3] they had a "reasonable basis" for treating the miners as independent contractors with regard to the cash bonuses and that therefore the amounts dispersed as cash bonuses were properly excluded from the relevant Forms 941 filed for both Kennedy and RBJ. They argue that because the government failed to prove that they were "without reasonable basis" under Sec. 530, their criminal convictions under Sec. 7206(2) cannot stand as the willfulness and falsity elements of the crime have not been sufficiently proven.
 
 
 11
 We find these arguments to be lacking in merit and likewise reject appellant's related argument that they were entitled to a jury instruction incorporating the elements of Sec. 530 as a theory of defense. We hold, in accordance with both the Second and Ninth Circuits, that Sec. 530, a civil provision, has no such applicability to a criminal prosecution under Sec. 7206(2). See United States v. MacKenzie, 777 F.2d 811, 817 (2d Cir.1985); United States v. McLaughlin, 663 F.2d 949, 952 (9th Cir.1981). As noted, the elements of the Sec. 7206(2) offense do not include disproof of the application of Sec. 530; moreover "the requirement of specific intent in this crime negates the availability of a section 530 defense." MacKenzie, 777 F.2d at 817.[4] Finally, even if Sec. 530 were somehow applicable to a Sec. 7206(2) prosecution, its bearing on the present case is doubtful where not only were the bonuses not reported on the relevant Forms 941, but overtime wages were also excluded. The alleged reasonableness of the belief that the miners were independent contractors is likewise belied by the failure to file Forms 1099, as would be consistent with such belief, until after commencement of the IRS investigation. See id. at 821 (order on petition for rehearing). Similarly, the extreme degree of control exercised by the companies over the miners negates the allegations of reasonable belief in the miners' independent status.
 
 
 12
 Because Sec. 530 was inapplicable to the defendants' prosecution under Sec. 7206(2), the government could show that the relevant Forms 941 were false if the amounts admittedly excluded were improperly excluded because they were wages to employees and not payments to independent contractors as the defendants allege. The district court substantially instructed the jury that the miners were to be considered employees, under the appropriate common law test, if the companies had a right to control the means and methods of the work they performed. The evidence substantially supports the jury's finding that the RBJ and Kennedy miners were employees. The companies had the right to fire the miners, and furnished nearly all tools and equipment as well as the work place itself. See United States v. General Inv. Corp., 823 F.2d 337, 341-42 (9th Cir.1987). Further, not only did the shift share the production related bonuses among its members, non-production shift members also received the bonus. The fact that the miners lost their entire bonus for a given period if they missed any time whatsoever during their regular eight-hour shift itself more than amply supports the jury's finding that the miners were employees whose wages, bonuses, and overtime were required inclusions on the companies' Forms 941.
 
 
 13
 The jury likewise could properly infer from the substantial degree of control which the companies exercised over the miners, from the evidence that Cox on several occasions told the miners that the bonuses were "tax free" or that the tax had been "taken care of"; and with the elaborate check cashing scheme and related misclassifications on the Kennedy and RBJ records, that Cox's actions in aid of Barbara Harris' ultimate filing of the Forms 941 for Kennedy were willful, or in intentional violation of a "known legal duty." That is all that is required to support a Sec. 7206 conviction. See United States v. Pomponio, 429 U.S. 10, 12 (1976).
 
 
 14
 The jury also could reasonably infer willfulness on defendant Willard's part from his participation in the switch to cash bonuses at Kennedy and his efforts to show Harris how to disguise these bonuses on Kennedy's records, as well as from his own reclassification of the bonus from the notes payable to the supplies account. Similarly, these actions of Willard's in concert with Jackson and Cox over the relevant tax periods coupled with his actual preparation of three of the false Forms 941 for RBJ were sufficient to establish the element of assistance under Sec. 7206(2). See Nye & Nissen v. United States, 336 U.S. 613, 619 (1949) (aiding and abetting only requires proof that defendant " 'in some sort associate himself with the venture ... that he seek by his action to make it succeed.' " (citations omitted)); see also United States v. Meinster, 619 F.2d 1041, 1047 (4th Cir.1980) (citing Nye & Nissen ).
 
 B
 
 15
 Appellants next challenge the sufficiency of the evidence to support their convictions for conspiracy to defraud the government in violation of 18 U.S.C. Sec. 371.
 
 
 16
 To sustain a conviction for conspiracy under Sec. 371, the government must prove an agreement or understanding between two or more persons to commit a criminal act and an overt act by one of the coconspirators in furtherance of the conspiracy.... The agreement can be inferred from the facts and circumstances of the case. It is sufficient if the circumstances reveal two or more persons acting in concert to commit a criminal act.... The evidence must also reveal that each defendant knew of the agreement and in some way expressed his participation in the scheme. The government need only prove one overt act listed in the indictment to sustain a conviction.
 
 
 17
 United States v. Caudle, 758 F.2d 994, 997 (4th Cir.1985) (citations omitted). The evidence, viewed in the light most favorable to the government, reveals that Cox, Willard, and Jackson met during October 1979 and immediately thereafter instructed bookkeeper Harris that the bonus payments would be made in cash. Cox and Jackson both participated in cashing the checks used to generate the bonuses, informed the miners that the taxes were "taken care of," and advised Harris not to include the bonuses on the Forms 941 as wages. Willard showed Harris how to misclassify the cash payments on her records in order to disguise them. The jury could reasonably infer the existence of a conspiracy to defraud the United States by defeating the lawful tax collecting functions of the IRS from this evidence.
 
 III
 
 18
 Defendants next contend that the district court erred, not only in refusing to submit to the jury their proffered instruction on the elements of Sec. 530, an argument which we have already rejected, but also in refusing to instruct the jury that it could find that their acts were not willful if Cox and Willard "relied upon and followed the advice of Mr. Blankenbeckler." While it is true that reliance on the advice of professional counsel may negate the element of willfulness, see United States v. Miller, 658 F.2d 235, 237 (4th Cir.1981), the defendants' proffered instructions did not properly state the relevant exculpatory rule in that no mention was made of two key elements of the defense--good faith and full disclosure. See id. The instruction was therefore properly refused. See United States v. Mitchell, 495 F.2d 285, 287-88 (4th Cir.1974).
 
 
 19
 The defendants also allege error in the district court's failure to instruct the jury that the fraud penalties assessed against several of the companies' miners for not including the bonuses within their taxable income involved prior determinations that the miners had engaged in "actual intentional wrongdoing." This instruction was sought in order to discredit the miners' testimony. Even assuming that it was error to deny this instruction, such error was harmless. Defense counsel had thoroughly impugned the miners' credibility in this regard during cross-examination and closing arguments and the district court thoroughly instructed the jury that a witness' testimony should be carefully considered where the evidence suggests that "at some other time the witness has said or done something ... that is inconsistent with the witness's present testimony."
 
 IV
 
 20
 The defendants next contend that the prosecution's failure to disclose, until giving its rebuttal summation, that it considered Harris and Blankenbeckler to be unindicted coconspirators violated the government's duty under Brady v. Maryland, 373 U.S. 83 (1963), to disclose, prior to trial, evidence that is exculpatory or impeaching, see United States v. Bagley, 473 U.S. 667, 676 (1985), and is material to the case. 373 U.S. at 87. We disagree.
 
 
 21
 The record reveals that the prosecution, by its assertion, was merely responding to an argument raised during defense counsel's own summation that a conspiracy was doubtful because Harris and Blankenbeckler had not been indicted. Defense counsel was obviously well aware that these two were potentially among the unindicted coconspirators referenced in the indictment, and sufficiently sought to impeach them in this regard by cross-examination. Therefore, even assuming that the government's theory of Harris and Blankenbeckler's status falls within Brady, we find that the prosecution did not violate its Brady obligation because the outcome of the case would not have been different had the information been disclosed. See 473 U.S. at 676.
 
 V
 
 22
 Finally, the defendants contend that they were deprived of a fair trial due to a myriad of alleged instances of prosecutorial misconduct during closing arguments. There are two components to the test for reversible prosecutorial misconduct: "(1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985) (citations omitted); see also United States v. Harrison, 716 F.2d 1050, 1051-52 (4th Cir.1983) (discussing factors relevant to prejudice determination). Bearing this in mind, we find that only two of the defendants' allegations of prosecutorial misconduct merit even limited discussion.
 
 
 23
 Defendants allege misconduct in the prosecutor's response to defense counsel's statement, in closing, that it is easy to obtain an indictment. The prosecutor stated to the jury that it is "not so easy or slick" to obtain an indictment as defense counsel would have the jury believe. Even assuming that this response, to which the defendants did not object, was improper it was not prejudicial because the district court gave a sufficient curative instruction, charging the jury that the fact of the indictment had no bearing on their assessment of guilt. Cf. United States v. Harrison, 716 F.2d 1050, 1051-52 (4th Cir.1983) (sufficient curative instructions negate prejudice).
 
 
 24
 Defendants also argue that references made by the prosecution to an unindicted conspiracy by the defendants to defraud the Virginia Employment Commission by the same acts by which they were charged with defrauding the United States were improper. Again, assuming error, the statements were not prejudicial in light of the district court's thorough instruction, charging the jury that the defendants could only be convicted of a conspiracy under 18 U.S.C. Sec. 371 if the jury found they had committed one of the overt acts charged in the indictment and that no defendant was on trial for any act not so charged. Moreover, ample evidence existed tying Cox and Willard to the conspiracy for which they were indicted.
 
 
 25
 We find no reversible error in defendants' remaining assignments of error and their convictions are therefore affirmed.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Counts IX-XIII were renumbered from the original indictment which included other charges against the defendants ultimately dismissed by the district court as barred by the relevant statute of limitations and not pertinent to this appeal
 
 
 [2]
 The Forms 941 for Kennedy during the relevant period were completed by Barbara Harris, an independent bookkeeper hired by Kennedy
 
 
 [3]
 Section 530 reads in relevant part:
 (a) Termination of Certain Employment Tax Liability for Periods Before 1980.--
 (1) In General. -- If--
 (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and
 (B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individuals for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.
 Revenue Act of 1978, Pub.L. No. 95-600, Sec. 530, 92 Stat. 2763, 2885-86 (codified at 26 U.S.C. Sec. 3401 note (1982)). Section 530 also provides some limited statutory methods for meeting the requirements of paragraph (a)(1). See id. There is no evidentiary basis in the record before us to suggest that, even if Sec. 530 were applicable, these "safe havens" might apply to the defendants. These provisions are, therefore, not pertinent to this appeal.
 
 
 [4]
 The defendants also appear to challenge the constitutionality of their convictions under Sec. 7206(2), alleging that the provision is void for vagueness in light of Sec. 530. This argument is without merit. See MacKenzie, 777 F.2d at 815-17